[No. 55174–0. En Banc. July 6, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL
HANDRAN, *Petitioner.*

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for petitioner.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

Dore, J.—The jury in this case was improperly instructed on the elements of burglary. However, the error was harmless. In addition, Handran was not deprived of jury unanimity on the question of the underlying assault and the instruction on intent given at his trial was proper. We affirm the conviction.

## FACTS

On November 19, 1985, near midnight, Daniel Handran was seen climbing in the window to his ex–wife Jill Handran's apartment. Jill awoke to find Handran leaning over her, nude and kissing her. She demanded that he leave immediately. Instead, he pinned her down, offered her money and at one point hit her in the face. Jill got up and called the police, who later arrested Handran.

Handran was charged by information with second degree burglary contrary to RCW 9A.52.030. On the first day of trial, the State amended the information to charge burglary in the first degree contrary to RCW 9A.52.020(1)(b). The court instructed the jury on burglary as follows:

To convict the defendant of the crime of burglary in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

. . . .

(2) That the entering or remaining was with intent to commit a crime against a person or property therein;

Clerk's Papers, at 28. While Handran did not request this instruction, he did not except to it nor did he request any further instructions. No other instructions specified or defined the "crime against a person or property therein" that Handran allegedly committed.

The jury found Handran guilty of first degree burglary. Handran appealed this decision and the Court of Appeals affirmed the trial court in an unpublished opinion.

## The Burglary Instruction Was Improper

In 1983, this court held that "it is error for the trial court in a burglary prosecution to fail in its instructions to specify and define the crime or crimes allegedly intended." *State v. Johnson,* 100 Wn.2d 607, 625, 674 P.2d 145 (1983). That decision was the controlling law in this State until it was overruled by *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985). There, the court held that "the specific crime or crimes intended to be committed inside burglarized premises is *not* an element of burglary that must be included in the . . . jury instructions . . ." *Bergeron,* at 16.

Handran's alleged criminal acts occurred after the *Johnson* decision was issued and before it was overruled in *Bergeron.* However, Handran was charged and brought to trial after *Bergeron* was decided. He therefore argues that, since the date of the alleged crime falls before the issuance of *State v. Bergeron, supra,* the trial court was required, in instructing the jury, to specify and define the underlying crime intended. The essence of Handran's argument is that application of the *Bergeron* rule in his case constitutes an enlargement of criminal liability and therefore an infringement upon his due process rights and an application of an ex post facto law.

■ The instructions given in this case do raise ex post facto and due process concerns. This court has stated:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. . . . If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

*State v. Gore,* 101 Wn.2d 481, 489, 681 P.2d 227 (1984) (quoting *Bouie v. Columbia,* 378 U.S. 347, 353–54, 12 L. Ed. 2d 894, 84 S. Ct. 1697 (1964)).

Prohibitions against ex post facto legislation are found in both U.S. Const. art. 1, § 9 and Const. art. 1, § 23. This court, in *State v. Edwards,* 104 Wn.2d 63, 70, 701 P.2d 508 (1985), adopted the United States Supreme Court's framework for an ex post facto analysis. This framework provides that a new law violates the prohibition against ex post facto laws if: (1) it aggravates a crime or makes it greater than it was when committed; (2) permits imposition of a different or more severe punishment than when the crime was committed; (3) changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed; or (4) it is made retroactive and disadvantages the offender. *Edwards,* at 70–71.

Under *Johnson,* the State had to prove not only an intent to commit a crime therein but also the underlying crime the defendant intended to commit. However, under *Bergeron,* the State does not have to prove the crime the defendant allegedly intended to commit. Therefore, instructing the jury under the *Bergeron* rule "changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed". *Edwards,* at 71. The instructions violated Handran's due process rights.

The court in *Johnson* carved a new element out of an existing statutory element. The court stated, "[t]he gist of [defendant's] claim is that [the failure to specify and define

the crime] constituted a failure to define every element of the offense charged." *Johnson*, at 623. The court then went on to quote *State v. Davis*, 27 Wn. App. 498, 506, 618 P.2d 1034 (1980):

> Where the crime charged is the attempt to commit an offense, but the offense allegedly attempted is not defined for the jury, the jury might assume that the State need only prove an attempt as defined by the court and not what was attempted. The State has thus been relieved of its burden of proving every element of the crime charged beyond a reasonable doubt.

*Johnson*, at 623–24.

Not only does the language of *Johnson* evidence the creation of a new element to the crime of burglary, but the language in *Bergeron* plainly states that, under *Johnson*, the specific crime intended was an "element" of the offense. For example, in *Bergeron* the court stated:

> We reconsider the principles announced in [*Johnson*]; and we reject these two premises as justifying the conclusion reached in *Johnson* that the specific crime intended is an "element" of the crime of burglary.

*Bergeron*, at 8. In its holding, *Bergeron* stated "that the specific crime or crimes intended to be committed inside burglarized premises is *not* an element of burglary . . ." *Bergeron*, at 16. By overruling that decision in *Bergeron*, this court permitted "less or different testimony" to convict the offender.

Therefore, in instructing the jury under the *Bergeron* standard the trial court violated Handran's due process rights. However, that conclusion does not require reversal.

## THE ERROR WAS HARMLESS

Even if we assume that *Johnson* governs Handran's case, reversal of the conviction is not required or justified. *Johnson* itself establishes when the failure to instruct the jury as to the elements of the underlying crime will be considered harmless error. Under the rationale of *Johnson*, the error committed here was harmless.

Generally speaking, courts have developed two alternative approaches in determining whether a constitutional error is harmless:

> (1) constitutional error is harmless only if it can be said beyond a reasonable doubt that it did not contribute to the verdict (hereinafter "contribution test"); and (2) constitutional error is harmless whenever it can be said beyond a reasonable doubt that the evidence not tainted by the error is so overwhelming that it *necessarily* leads to a finding of guilt (hereinafter "overwhelming evidence test").

*Johnson,* 100 Wn.2d at 621.

In two of the several consolidated cases decided in *Johnson,* the court applied the "contribution test" and decided that the failure of the instructions to define the underlying crime charged was harmless. The court stated a clear standard to determine whether such a failure to instruct did or did not contribute to the verdict.

> Failure to specify and define the underlying crime in a burglary prosecution can affect the verdict only if the jury concludes there was some borderline conduct intended which it believes is, but which is actually not, a crime.

*Johnson,* at 627. In other words, an erroneous instruction is reversible error only if there is a danger that the jury based its finding that a crime was intended on evidence of intent to commit an act which is not a crime: the "borderline conduct" to which *Johnson* refers. The failure to define the underlying crime contributes to the verdict only where the lack of a definition leaves the jury to speculate in this fashion.

There was no possibility of such confusion on the part of the jury in the Handran case. The State offered evidence that, after entering the dwelling, he kissed Jill, held her down and struck her in the face. She consented to none of this contact. This is clear, unequivocal evidence of intent to commit a crime—assault—on which the jury could base its determination that Handran intended to commit a crime upon entering the dwelling. No "borderline conduct" was involved here. Under the standard defined by *Johnson,*

therefore, the error committed in Handran's trial was harmless.

## THE REQUIREMENT OF JURY UNANIMITY WAS NOT VIOLATED

Handran argues that the trial court erred in failing to instruct the jury that it must be unanimous as to which act alleged constituted the "assault" element of first degree burglary. He contends that the jury could have found an assault in his kissing Jill Handran or in his hitting her, but that the jury should have been instructed to reach a unanimous decision that one or the other of those acts constituted the underlying assault. This argument fails, however, because these two acts of assault were part of a continuing course of conduct.

■■ Where the State presents evidence of several distinct acts, any one of which could be the basis of a criminal charge, the trial court must ensure that the jury reaches a unanimous verdict on one particular incident. *State v. Petrich,* 101 Wn.2d 566, 683 P.2d 173 (1984). However, this rule applies only where the State presents evidence of "'several distinct acts'". It does not apply where the evidence indicates a "continuing course of conduct". *Petrich,* at 571. To determine whether criminal conduct constitutes one continuing act, the facts must be evaluated in a commonsense manner. *Petrich,* at 571. For example, where the evidence involves conduct at different times and places, then the evidence tends to show "several distinct acts". *See State v. Workman,* 66 Wash. 292, 294–95, 119 P. 751 (1911); *Petrich,* at 571.

Handran's alleged criminal conduct occurred in one place during a short period of time between the same aggressor and victim. Under a commonsense evaluation of these facts, the actions evidence a continuing course of conduct to secure sexual relations with his ex–wife, whether she consented or not, rather than several distinct acts. Even if the acts were characterized as distinct, the error is harmless if a rational trier of fact could have found each incident proved

beyond a reasonable doubt. *Petrich,* at 573. The record shows substantial evidence of each touching. As the record substantiates sufficient evidence supporting each act, the lack of jury unanimity does not violate a defendant's right to a unanimous jury verdict. *State v. Whitney,* 108 Wn.2d 506, 511, 739 P.2d 1150 (1987).

### THE INTENT INSTRUCTION WAS PROPER

Handran excepted to instruction 9 which read:

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Clerk's Papers, at 31. Handran objected to this instruction for two reasons: (1) because the defendant has testified, has offered an explanation as to why he was there, this instruction should not be given in any form; and (2) it affects the burden which the State has in proving each and every element of the offense beyond a reasonable doubt.

The *Johnson* court at page 611 addressed the issue of error in the following instruction on presumption of intent provided for by RCW 9A.52.040:

> [A]ny person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to you to have been made without criminal intent.

The only difference between the two instructions is the addition of the last sentence in Handran's instruction.

In *Johnson,* the court held this instruction was unconstitutional unless the defendant in his case in chief produces sufficient evidence of his intent to rebut the mandatory nature of the presumption. *Johnson,* at 619–20. The court reasoned that when the defendant produces evidence, the jury becomes free to reject the specified inference and the presumption becomes in essence a permissive inference.

*Johnson,* at 618. In these circumstances, a production shifting presumption is permissible if under the facts of the case, there is a rational way the trier could make the connection permitted by the inference. *Johnson,* at 619–20. In such cases there would be no error in giving the challenged instruction. This was the situation in the subject case. No error is present for two reasons: (1) Handran, as he acknowledged in his exception, produced evidence in his trial of his intent; and (2) the last sentence of the instruction itself makes clear that the inference is at most permissive and not mandatory or production shifting.

CONCLUSION

While the instruction on burglary given in Handran's case was not proper, the error was harmless. Handran was not deprived of jury unanimity on the question of the underlying assault and the instruction on intent was proper.

We affirm the conviction.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.