# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

ANDRE ROMEO ZAMORA-
SARMIENTO,

Appellant.

No. 72234-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 14, 2015

LEACH, J. — Andre Zamora-Sarmiento appeals his conviction for one count of filing a fraudulent insurance claim. At trial, the State produced evidence of four potential acts of fraud against USAA Insurance: three bills with the amounts shown fraudulently altered and one false list of emergency room services received. Zamora[1] challenges the trial court's failure to instruct the jury that it must be unanimous as to the fraudulent act it relied on in reaching its verdict.

Because the four acts shown by the prosecution arose out of the same car accident, occurred within five months of each other, had the same intended victim, and had the same objective, those acts were part of a continuing course of conduct by

---

[1] We refer to the appellant as "Zamora" because he testified at trial that "Zamora" is his last name.

Zamora. Thus, the trial court was not required to give a unanimity instruction. We affirm.

## Background

Zamora was injured and his vehicle damaged in a two-car accident in Tacoma, Washington, on November 3, 2011. The other driver was at fault. The driver's insurer, USAA Insurance, agreed to pay Zamora $700.00 for pain and suffering, $2,543.01 for damage to his vehicle, and for any medical bills arising from the accident.

Between December 2011 and April 2012, Zamora sent three bills to USAA, all stemming from the same hospital visit on the day of the accident. Someone had altered each bill to reflect an increase in the dollar amount owed. The first bill, from Valley Medical Center, had been increased from $1,228.30 to $2,139.50. The second, from Valley Radiology, had been increased from $33.50 to $3,358.80. And the third, from Associated Emergency Physicians, had been increased from $360.00 to $9,360.00.

USAA paid Zamora the increased amounts for the first two bills but sought further information about the third. In response, Zamora sent a list, purporting to be from the emergency room. It described charges for services and supplies totaling $9,360. Associated Emergency Physicians does not provide as emergency room services the tests and supplies listed. Zamora admitted to a USAA investigator that he had handwritten the list of services and supplies, signed the corresponding bill, and faxed the itemized statement to USAA.

At trial, Zamora testified that his mother used drugs and brought other drug users to the house she shared with Zamora. He also testified that his mother routinely

opened and read his mail. He stated that he sent the bills to USAA without changing them and that his mother and father told him they had paid the bills.

On April 1, 2012, Zamora's mother suffered an aneurysm and was hospitalized. She died on April 18. The first bill was submitted before her death, in December 2011. The second bill was submitted during the time she was in the hospital, and the third bill was submitted after her death.

The State charged Zamora with one count of filing a fraudulent insurance claim. The court instructed the jury to convict Zamora if it found beyond a reasonable doubt that in addition to other elements, "during a period from on or about December 14, 2011, through on or about May 24, 2012, the defendant presented or caused to be presented a claim or proof in support of such claim for the payment of a loss under a contract of insurance to USAA Insurance Company."

A jury found Zamora guilty as charged. Zamora appeals.

We affirm.

## Analysis

Zamora contends that his conviction violated his constitutional right to a unanimous jury verdict. Because the State produced evidence of four separate acts and the prosecutor did not elect one for the jury to rely on, he claims the trial court had to instruct the jury that it must unanimously agree on the act or acts which constituted fraud. The State responds that no unanimity instruction was required because Zamora's multiple acts were part of a continuing course of conduct with a single

objective. The State also argues that any error committed by the trial court was harmless.

We review the adequacy of jury instructions de novo.[2]

The state constitution entitles a criminal defendant to a unanimous jury verdict.[3] When the State alleges multiple criminal acts but charges the defendant with only one crime, either the State must choose the act it relies on for conviction or the court must instruct the jury that it must agree unanimously that the State proved a single act beyond a reasonable doubt.[4] If neither of these alternatives occurs, some jurors may rely on one criminal act while other jurors rely on another, meaning the jury would not be unanimous on all of the elements necessary for a conviction.[5] A court's failure to give a required unanimity instruction is harmless if the reviewing court concludes that "no rational trier of fact could have entertained a reasonable doubt that each incident established the crime beyond a reasonable doubt."[6] As an error of constitutional magnitude, it can be raised for the first time on appeal.[7] We will not find this error harmless unless the State demonstrates this beyond a reasonable doubt.[8]

No election or unanimity instruction is required, however, if the evidence shows that the several acts constitute a continuing course of conduct.[9] Evidence tends to

---

[2] State v. Johnson, 180 Wn.2d 295, 300, 325 P.3d 135 (2014).
[3] State v. Smith, 159 Wn.2d 778, 783, 154 P.3d 873 (2007); CONST. art. I, § 21.
[4] State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988).
[5] Kitchen, 110 Wn.2d at 411.
[6] Kitchen, 110 Wn.2d at 405-06 (citing State v. Loehner, 42 Wn. App. 408, 411, 711 P.2d 377 (1985) (Scholfield, A.C.J., concurring)).
[7] State v. Crane, 116 Wn.2d 315, 325, 804 P.2d 10 (1991).
[8] Kitchen, 110 Wn.2d at 411-12.
[9] State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989).

show several distinct acts if it involves conduct at different times and places or against different victims.[10] By contrast, a continuing course of conduct involves "an ongoing enterprise with a single objective."[11] We use common sense to determine whether multiple acts constitute one continuing offense.[12]

Merely having the same victim does not make separate acts a continuing offense. In State v. Petrich,[13] the Supreme Court held that the trial court erred in failing to give the jury a unanimity instruction where the State charged the defendant with one count of indecent liberties and one count of second degree statutory rape. The victim testified to at least four instances of sexual contact over 22 months.[14] The court held that because "each described incident occurred in a separate time frame and identifying place," the defendant's acts were not a continuing course of conduct.[15] The common victim provided the only connection between the acts, and this was "not enough to call the offense one transaction."[16]

By contrast, an ongoing scheme to defraud a single victim can be a continuing offense even when it takes place over a long period. In State v. Knutz,[17] Division Two of this court found that the defendant was not entitled to a Petrich instruction because her numerous acts of fraud constituted a continuing course of conduct. The defendant

---

[10] State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).
[11] Love, 80 Wn. App. at 361.
[12] Handran, 113 Wn.2d at 17.
[13] 101 Wn.2d 566, 568, 573, 683 P.2d 173 (1984).
[14] Petrich, 101 Wn.2d at 568.
[15] Petrich, 101 Wn.2d at 571.
[16] Petrich, 101 Wn.2d at 571.
[17] 161 Wn. App. 395, 409, 253 P.3d 437 (2011).

fraudulently obtained cash loans from a retired music professor over 29 months.[18] The defendant requested the loans for various claimed purposes, including paying a traffic fine, opening a bank account, buying gas, paying a welfare penalty, and paying for medical expenses.[19] The court instructed the jury "to convict" if, among other elements, "between January 1, 2005 and March 30, 2008 the defendant *by color or aid of deception*, obtained control over . . . money belonging to" the victim.[20] The defendant claimed that the trial court erred in not providing a Petrich instruction because the State relied "'on multiple acts occurring over the course of three years to establish'" theft.[21]

Division Two affirmed the trial court because the defendant used the victim "'to promote an enterprise with a single objective'—to obtain money through deceit."[22] Despite the loans taking place over a long period of time, the court found that the defendant engaged in a "'continu[ing] course of conduct'"[23] rather than conduct "'solely descriptive of separate distinct acts or transactions.'"[24]

The Knutz court relied on a decision of this court, State v. Barrington.[25] The defendant in Barrington promoted a prostitution enterprise over three months, involving one woman and with "a single objective—to make money."[26] The court concluded that

---

[18] Knutz, 161 Wn. App. at 399.
[19] Knutz, 161 Wn. App. at 399.
[20] Knutz, 161 Wn. App. at 401.
[21] Knutz, 161 Wn. App. at 406.
[22] Knutz, 161 Wn. App. at 409.
[23] Knutz, 161 Wn. App. at 409 (internal quotation marks omitted) (quoting Handran, 113 Wn.2d at 17).
[24] Knutz, 161 Wn. App. at 409 (quoting State v. Barrington, 52 Wn. App. 478, 481, 761 P.2d 632 (1988)).
[25] 52 Wn. App. 478, 761 P.2d 632 (1988).
[26] Barrington, 52 Wn. App. at 481.

the defendant's acts were a continuing course of conduct distinguishable from the "separate distinct acts occurring in a separate time frame and identifying place" at issue in Petrich.[27]

We agree with the State that the trial court did not err in failing to give a Petrich instruction.

The cases cited by the State have one distinguishing aspect: the information and the instructions in Barrington and Knutz described the charged crime in terms of continuing acts, while the information and "to convict" instruction here indicated a singular act. The State charged Barrington with a crime, promoting prostitution, that "'contemplates a continuing course of conduct: instituting, aiding, or facilitating a prostitution enterprise.'"[28] Similarly, in Knutz the information stated the first degree theft charge "was actually a 'series of offenses in that the offense involved . . . multiple incidents per victim.'"[29] By contrast, the trial court in this case instructed the jury "to convict" if, among other elements, "the defendant presented or caused to be presented a claim or proof in support of such claim for the payment of a loss under a contract of insurance to USAA Insurance Company."[30]

---

[27] Barrington, 52 Wn. App. at 482.
[28] Barrington, 52 Wn. App. at 482 (quoting State v. Gooden, 51 Wn. App. 615, 618, 754 P.2d 1000 (1988)).
[29] Knutz, 161 Wn. App. at 409.
[30] In relevant part, the jury was instructed that it must find beyond a reasonable doubt that "during a period from on or about December 14, 2011, through on or about May 24, 2012, the defendant presented or caused to be presented a claim or proof in support of such claim for the payment of a loss under a contract of insurance to USAA Insurance Company."

Although the phrasing of the information and instructions in <u>Barrington</u> and <u>Knutz</u> supported the decisions in those cases, it did not control them. Instead, the courts looked at the defendant's conduct and if those acts made up a "continuing course of conduct." Here, the State presented evidence that Zamora sent four fraudulent documents between December 2011 and May 2012. Each described medical expenses for hospital visits on November 3, 2011, arising out of the same auto accident. Each was submitted to the same insurance company. And each had the same intent: to defraud that company by inflating the value of the services Zamora actually received.

Zamora's acts are analogous to those of the defendant in <u>Knutz</u>. To the extent they differ, the State has an even stronger argument that Zamora's acts comprised a continuing course of conduct. In both cases, each act had the same victim. But in <u>Knutz</u> the acts took place over 29 months, while Zamora's took place over 5. And while Knutz's misrepresentations related to various asserted needs during that time—for gas, payment of fines, or treatment of nonexistent illnesses—Zamora's all had the same subject: medical expenses incurred on November 3, 2011.

Applying the commonsense approach of <u>Petrich</u>, then, Zamora's acts constitute a continuing course of conduct. Thus, we agree with the State that the facts of this case did not require a unanimity instruction or election of a specific act by the prosecutor at trial.

## Conclusion

Because the four fraudulent acts the State attributed to Zamora were part of one continuing course of conduct that arose out of the same car accident, occurred within

five months of each other, had the same intended victim, and had the same objective, the trial court did not err in failing to give a unanimity instruction. We affirm.

Leach, J.

WE CONCUR: