IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33170-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROCKY M. HENSLEY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Rocky Hensley appeals his conviction for fourth

degree assault. He argues his constitutional right to a unanimous jury verdict was

violated because the State presented evidence of multiple assaults but the trial court did

not give a *Petrich*[1] unanimity instruction. He also asks this court to strike the

discretionary legal financial obligations (LFOs) from the judgment and sentence. We

determine that a *Petrich* instruction was not required because the State elected to rely on

acts occurring during a short melee. We, however, remand to give the trial court the

---

[1] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

discretion to either strike the discretionary LFOs or to conduct a proper *Blazina*[2] inquiry.

## FACTS

In October 2012, Mr. Hensley was a patient in the psychiatric unit at Lourdes Counseling Center (Lourdes) in Richland, Washington. Around October 21, Mr. Hensley became agitated and Lourdes staff moved him into the "quiet room." Report of Proceedings (RP) at 70. Garrett Fordmeir, a mental health aide, monitored Mr. Hensley in the quiet room area. A short melee occurred later that morning involving Mr. Hensley and Mr. Fordmeir. As a result, the State charged Mr. Hensley with assaulting Mr. Fordmeir. Specifically, the charging document stated Mr. Hensley assaulted Mr. Fordmeir by "hitting, pushing, or spitting upon him." Clerk's Papers (CP) at 72.

At trial, the State called Mr. Fordmeir. Mr. Fordmeir answered questions concerning Mr. Hensley's mood and behavior the morning of October 21. Initially, Mr. Hensley was acting in a hyper-sexual manner while in the quiet room. For instance, he sexually propositioned Mr. Fordmeir and also tapped Mr. Fordmeir on the buttocks a couple times.

Later that morning, Mr. Hensley was loud and would not stop pounding on the quiet room door. Mr. Fordmeir entered the room and attempted to discipline Mr. Hensley

---

[2] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

2

by removing his radio. Mr. Hensley began screaming, and a nurse opened the quiet room door to assist. Mr. Hensley turned his attention from Mr. Fordmeir to the opening door. Mr. Hensley shoved the nurse and attempted to escape from the room. Mr. Fordmeir tried to restrain him. According to Mr. Fordmeir, Mr. Hensley hit him in the face three times with a closed fist. Other staff assisted. Eventually, Mr. Fordmeir was able to push Mr. Hensley toward a corner of the quiet room so staff could exit. Mr. Hensley then spit in Mr. Fordmeir's eye. Mr. Fordmeir then shoved Mr. Hensley into the corner, which allowed Mr. Fordmeir and the nurse to exit the room and lock the door behind them.

Mr. Hensley testified on his own behalf. He admitted to acting in a hyper-sexual manner, blamed his actions on medication, but denied tapping Mr. Fordmeir on the buttocks. He also denied that he later hit Mr. Fordmeir, or that he spit on him. Further, he testified that it was Mr. Fordmeir who pushed him.

After the trial court read its instructions to the jury, the parties gave their closing arguments. Consistent with the charging document, the State did not argue that the tapping of Mr. Fordmeir's buttocks, which occurred prior to the short melee, was an assault.

During deliberations, the jury submitted the following question in writing to the court: "Are we also to consider the bottom patting and spitting in Mr. Fordmeir's face in

3

the assault charge?" CP at 99. The trial court did not convene counsel to obtain their input on how to respond. Instead, the court wrote back to the jury that it should rely on their collective memories of the evidence and the court's instructions.

The court clerk informed defense counsel by telephone of the jury's question and the court's response. Defense counsel complained to the clerk about the court's response and was informed that an objection on the record at that time was unnecessary. Soon after, the jury announced it had a verdict. Counsel convened in the courtroom prior to the jury announcing its verdict. Defense counsel objected on the record to the court's response. Defense counsel noted that the court's response allowed the jury to convict Mr. Hensley on an uncharged act, tapping Mr. Fordmeir on his buttocks.

The jury convicted Mr. Hensley of fourth degree assault. At the sentencing hearing, defense counsel asked the court to impose only mandatory LFOs. The court then asked defense counsel which LFOs were mandatory. Defense counsel stated that the witness fee, jury demand fee, sheriff's service fee, filing fee, and victim assessment were all mandatory. The court then imposed a $41.28 witness fee, a $250.00 jury demand fee, a $60.00 sheriff's service fee, a $200.00 filing fee, and a $500.00 victim assessment. Mr. Hensley appeals.

4

ANALYSIS

A.    JURY UNANIMITY

Mr. Hensley argues his constitutional right to a unanimous jury verdict was violated because the State presented evidence of multiple assaults, any of the assaults could have constituted the charged crime, and the trial court did not give the jury a *Petrich* unanimity instruction. Although Mr. Hensley did not object to the trial court's instructions or request a unanimity instruction, the alleged error is one of constitutional magnitude and may therefore be raised for the first time on appeal. *E.g.*, *State v. Crane*, 116 Wn.2d 315, 325, 804 P.2d 10 (1991).

The Washington Constitution gives criminal defendants the right to a unanimous jury verdict. CONST. art. I, § 21. In cases where the State presents evidence of multiple criminal acts and any one of these acts could constitute the crime charged, the jury must unanimously agree on the same act that constitutes the crime in order to convict the defendant. *Petrich*, 101 Wn.2d at 572. To ensure jury unanimity when multiple acts could relate to one charge, "either the State [must] elect the particular criminal act upon which it will rely for conviction, or . . . the trial court [must] instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). Election

5

of an act may be established if the State's charging document, when considered with the jury instructions and the State's closing argument, makes it clear which act or acts the State is relying on for the charge. *State v. Bland*, 71 Wn. App. 345, 351-52, 860 P.2d 1046 (1993), *overruled in part on other grounds by State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007).

Constitutional error occurs if the State does not make an election and the trial court does not give a unanimity instruction. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). The error stems from the possibility that some jurors may have relied on one act as the basis for convicting the defendant and other jurors may have relied on a different act, resulting in a lack of unanimity on all of the elements necessary for a valid conviction. *Kitchen*, 110 Wn.2d at 411.

An exception exists when the evidence shows the defendant was engaged in a "continuing course of conduct." *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). In determining whether the evidence supports multiple criminal acts or a continuing course of conduct, this court considers (1) the time that elapsed between the criminal acts, and (2) whether the different acts involved the same parties, the same location, and the same ultimate objective. *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d

6

395 (1996). This court must also evaluate the facts in a commonsense manner. *Petrich*, 101 Wn.2d at 571.

In *Crane*, the court found the continuing course of conduct exception applied where the defendant inflicted multiple injuries on the same victim during a specific two-hour period. *Crane*, 116 Wn.2d at 320-21, 330. The court held that *Petrich* did not apply because the evidence supported "only a small time frame in which the fatal assault could have occurred." *Id.* at 330. Similarly, in *Handran*, the court found the continuing course of conduct exception applied because the defendant broke into his ex-wife's residence and repeatedly assaulted her at the same place, during a short period, and for the same purpose of obtaining sex. *See Handran*, 113 Wn.2d at 17.

Here, the State elected to charge Mr. Hensley with assault based only on the acts that occurred during the short melee. Like in *Crane* and *Handran*, the evidence here indicates that Mr. Hensley's actions during the short melee were all part of a continuous course of conduct. Because the State elected to charge Mr. Hensley only with these acts, a *Petrich* unanimity instruction was not required.

Mr. Hensley argues the jury may have lacked unanimity because some jurors may have convicted him based on the melee while others may have convicted him based on the buttocks tapping. He implies that such a conviction lacks the required jury unanimity

because the tapping on the buttocks occurred separately and earlier than the melee, and was done with a different purpose. While this is arguably true, the error if any occurred after the jury was properly instructed and was a result of the trial court's response to the jury question. Mr. Hensley does not assign error to the trial court's response. We conclude that a *Petrich* unanimity instruction was not required.

B.    IMPOSITION OF DISCRETIONARY LFOS

Mr. Hensley asks this court to strike the discretionary LFOs from the judgment and sentence because the sentencing court only intended to impose mandatory LFOs.

Defense counsel informed the sentencing court that the $41.28 witness fee, $250.00 jury demand fee, $60.00 sheriff's service fee, $200.00 filing fee, and $500.00 victim assessment were all mandatory LFOs. Defense counsel was correct that the filing fee and victim assessment were mandatory. *See* RCW 36.18.020(2)(h); RCW 7.68.035(1)(a). However, the witness fee, sheriff's service fee, and jury demand fee were discretionary. *See* RCW 10.01.160(2) (authorizing "expenses specially incurred by the state in prosecuting the defendant"); RCW 36.18.016(3)(b) (stating that a $250 jury demand fee *may* be imposed on conviction).

Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. *State v. Mercado*, 181 Wn. App. 624, 630, 326 P.3d 154

8

(2014). To be invited, the defendant must materially contribute to the error by engaging in some type of affirmative action through which he or she knowingly and voluntarily sets up the error. *Id.* "The invited error doctrine is strictly enforced to prevent 'parties from benefiting from an error they caused at trial regardless of whether it was done intentionally or unintentionally.'" *State v. Ortiz-Triana*, 193 Wn. App. 769, 777, 373 P.3d 335 (2016) (quoting *State v. Recuenco*, 154 Wn.2d 156, 163, 110 P.3d 188 (2005), *rev'd on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). The invited error doctrine applies to LFO and restitution challenges. *See State v. Stoddard*, 192 Wn. App. 222, 225, 366 P.3d 474 (2016) (invited error doctrine precludes review of the restitution judgment where defendant agreed to restitution amount).

Nevertheless, we decline to affirm on an invited error analysis. To do so would be inconsistent with recent admonitions that trial courts may not impose discretionary LFOs without first conducting an individual inquiry into the defendant's current and future ability to pay. *Blazina*, 182 Wn.2d at 838. We, therefore, remand to the trial court for it to either strike the discretionary LFOs or conduct the required inquiry.

9

No. 33170-9-III
*State v. Hensley*

Affirmed in part and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.                          Pennell, J.

10