IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>ARMANDO LUIS SANCHEZ,<br><br>               Appellant. | No. 84044-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — A jury convicted Armando Sanchez of one count of felony violation of a no contact order. He challenges his conviction based on the trial court's failure to give a unanimity instruction to the jury and erroneous admission of evidence. He also alleges ineffective assistance of counsel for failing to request the correct unanimity instruction and a mistrial. Additionally, Sanchez challenges the admission of an officer's testimony about a 911 call. Finally, he requests the victim penalty assessment (VPA) be stricken from his sentence based on recent amendments that allow a court to waive the VPA based on indigency.

We determine that because the evidence established a single course of conduct that violated the no-contact order, rather than multiple acts, no jury unanimity instruction was required. Because we determine that Sanchez's other claims also lack merit, we affirm the conviction and remand for the trial court to strike the VPA from his sentence.

FACTS

The State charged Sanchez with two counts of domestic violence felony violation of a court order for the protection of Kylee Ramirez,[1] one alleged to have occurred on October 31, 2021, and the other on November 1, 2021. The violations were charged as felonies based on at least two prior convictions or commission of assault during the prohibited contact.

Sanchez moved to sever the two counts, but the trial court denied his motion. Sanchez then moved to bifurcate the prior convictions and domestic violence portions of the trial from the underlying allegations of violations of the no contact order. The trial court granted the motion to bifurcate such that the jury would first decide whether there was a violation of the court order and an assault before determining whether the State had established an intimate relationship and the two prior convictions required to elevate the counts to felonies.

Ramirez did not testify. During the first phase of trial, the State established that Ramirez had an order of protection against Sanchez in effect until June 19, 2022. State also presented evidence from two witnesses and several police officers about events on October 31, 2021 (Count 1) and November 1, 2021 (Count 2). The majority of the evidence pertained to November 1.

Officer Canon Westland testified that he was dispatched to Ramirez's large apartment complex on October 31. He spoke with Ramirez and attempted

---

[1] Her name also appears in the record as Kylee Offutt Ramirez. As she referred to herself as Kylee Ramirez, we use that name.

to locate Sanchez in a mint green Subaru to investigate violation of the no contact order. The officer saw a mint green Subaru on a street outside the complex. The vehicle turned into the complex and Officer Westland identified Sanchez as the driver. He activated his lights and siren, but the vehicle did not stop and Westland did not pursue.

Witness David Jernigan testified to an incident he witnessed on his way home from work on November 1, 2021. Jernigan saw a gray Mercedes leave a gas station on Military Road. The car "pulled out into the median and stopped at an angle," and a woman stepped out of the driver's seat and appeared to fall back in the car. She tried to exit again, but Jernigan said he "saw her grabbed and yanked in." At that point, Jernigan's driver side was next to the Mercedes' driver side and he could see a man grabbing the woman and pulling her back into the vehicle. Jernigan described the man as Hispanic with "very short hair and a moustache." When the car drove away, Jernigan attempted to follow but lost them. He called 911 and reported the incident.

The State introduced and played Jernigan's 911 call for the jury. During the call, Jernigan identified the location as 272nd Street and Military Road. He told the operator he had seen a woman in a gray Mercedes stop in the middle of the turn lane heading the wrong direction and get out of the car. Jernigan stated, "I realized there was a guy inside that was hitting her and trying to pull her back in." The operator asked if Jernigan had seen the man hit the woman. Jernigan

3

responded, "I saw him wrestling with her and pulling her in. And she said he was hitting her."

Witness John Foss testified that on November 1, 2021, he was in his living room at 3630 South 249th Street when he observed a couple "arguing and pushing and shoving" in the front yard of the house across the street. After the pushing and shoving in the yard, the woman

> got in the car and drove up and down the street a couple times. And then—to the east and back again, to the east and back again. And then parked in front of the house and then there was some— it's—this is how it seemed to me. And anyway, there was some— some discourse there. Him or some—him coming and going from the car and in the midst of all of that, he slammed the driver's side car door and her arm was sticking out of the car door. And that's the point at which I thought this was getting out of hand and called 911.

According to Foss, the man slammed the car door "rather forcefully" and he thought, "woo, that hurts."[2]

Foss called 911. The jury heard the audio from the call. During the call, Foss described a "little fight going on . . . in the street here between a man and a woman across the street from us." He reported "a bunch of screaming and some slamming," and then the woman drove away in a small, gray Mercedes. Foss noted that the man was not the owner of the home, but "a guest or something"

---

[2] In response to the State's request to describe the door slamming, Foss testified "he pushed it rather forcefully, you know, slamming. I was—I thought woo, that hurts. And I was kind of surprised to see her immediately drive off. I thought—I thought she was injured and—and probably needed help, but—but she drove off." Sanchez objected as speculation and narrative, and the court sustained the objection. Sanchez moved to strike, which the court also granted. It is unclear whether the court struck the entire reply or the speculation about the woman needing help.

who "pulled a bunch of plastic bags out of the car and she left." Foss provided a description of the man as late 20s, white, 5'10", wearing a gray hoodie sweatshirt and black striped Adidas shorts. He said the woman was dark haired, Caucasian, and "a little bit heavy."

Officer Melvin Partido testified that he was dispatched around 3:00 p.m. on November 1 and met with a woman at 24700 Military Road South approximately two blocks from 249th Street. The woman arrived in a gray Mercedes and identified herself as Ramirez. According to Partido, Ramirez appeared to have been crying earlier and had redness on the right side eye area and upper cheek. Later Partido noticed redness on her right shoulder. He documented these observations with photographs.

Over defense objections, the State introduced a 911 call through Officer Partido, who testified it was "related to the call [he] was dispatched for," and played it for the jury. The female caller was in her vehicle at the corner of Military Road and 249th Street. She identified herself as Kylee Ramirez. She reported a domestic violence incident and gave the address at 3629 as the location for the police response.[3] She stated, "he hit me" and told the operator that they have a no contact order. She further elaborated that she was bringing him some items that he had left at her residence, when

> he hopped in the car and he hit me and he pulled my hair. And he
> hit me in the face and he hit me in my head and he slapped me in

---

[3] The caller said "it's address 3629," and the operator cut her off saying, "Yes, you told me the address." In fact, the caller had given only the cross streets. The State argues that therefore, this "suggests that the operator already knew the address based on Foss's 911 call."

5

the car and I was trying to get out of the car. And I was just trying to just give him his stuff and drop them off.

Ramirez was driving to her house in a gray Mercedes, but the man remained at the 3629 address. Ramirez identified the man as Armando Sanchez and noted that he was wearing black shorts and a gray sweater.

Officer Nicholas Lontz was on duty around 6:45 p.m. on November 1 when he was dispatched to 3629 South 249th Street. After arriving in the vicinity he spoke on the phone with Officer Partido. Officer Lontz then began looking for Sanchez by walking up to the address and contacting the people standing outside. Officer Lontz did not locate Sanchez.

After the State rested its case, Sanchez moved to dismiss for insufficient evidence. The trial court denied the motion for Count 2, but dismissed Count 1 because the State failed to make a prima facie case that Sanchez was within 1,000 feet of Ramirez or knew he was within that distance at the apartment complex on October 31. The court provided a jury instruction that Count 1 was no longer at issue and jurors were not to consider any evidence as to the alleged events on October 31.

During discussion about jury instructions, the trial court inquired whether the parties needed a Petrich[4] instruction, "because on Count 2, there was evidence of two potential assaults. So we would need unanimity as to which created assault." Later, the trial court noted its mistake with respect to the Petrich

---

[4] State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984).

instructions because the charged crime was violation of a no contact order rather than assault:

> I got so fixated on the assault when I mentioned the Petrich Instruction because there's two separate acts with a brief [sic] in time, so I wasn't seeing it as a continuing course of conduct, but that's not an issue here. The crime is No Contact Order Violation. The jury just needs to be unanimous that there was a violation and unanimous there was an assault.

Sanchez responded that he believed the testimony warranted a Petrich instruction because the State still needed to prove assault beyond a reasonable doubt and "we do have these . . . totally separate incidents." Sanchez argued that "if [the jurors] find that there was an assault, this element of the crime, that they need to agree about what that—what that assault was." The trial court disagreed and denied a Petrich instruction.

After the first phase of the trial, the jury returned a guilty verdict for violation of a court order as charged in Count 2. For the special verdict phase of the trial, the State introduced certified judgment and sentence documents from Yakima Municipal Court for two separate convictions for violation of a no contact order. The special verdict form inquired, "Whether at the time of the violation in Count 2, the defendant's conduct was an assault, or the defendant had twice been previously convicted for violating the provisions of a court order," and the jury replied "yes." The jury also determined that Sanchez and Ramirez were intimate partners prior to or at the time of the crime. The court sentenced Sanchez for domestic violence felony violation of a no contact order and imposed a standard sentence of 60 months.

7

DISCUSSION

I.    Unanimity Instruction

Sanchez argues reversible error because the evidence at trial established multiple acts that could have resulted in the conviction, but the State did not elect a specific act and the trial court did not issue a Petrich instruction to ensure jury unanimity. We determine that the trial court did not err by failing to give an unanimity instruction.[5]

Washington criminal defendants have a constitutional right to a unanimous jury verdict. WASH. CONST. art. I, sec. 22. When the prosecution presents evidence of multiple acts of misconduct that could form the basis of a charged count, the State must elect the act to support a conviction or the court must instruct the jury to agree on a specific criminal act. State v. Coleman, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). "An election or instruction that all 12 jurors must agree that the same underlying act has been proved beyond a reasonable doubt assures a unanimous verdict on one criminal act." Id. at 512. Without either an election or a unanimity instruction in a multiple acts case, omission of the unanimity instruction is presumed prejudicial. Id. However, no unanimity

---

[5] The State argues that Sanchez waived review of the error because he requested a unanimity instruction only for assault, not for the violation of the no-contact order charge and thereby failed to properly preserve the issue for appeal. Br. of App. at 20 n.5 ("Mr. Sanchez agrees the defense-proposed instruction was mistakenly worded as several distinct acts of *assault* rather than *no-contact order violations*." (emphasis in original)). However, a party may raise manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3). Washington courts have recognized that jury instructions that fail to require a unanimous verdict constitute manifest error affecting a constitutional right. State v. Lamar, 180 Wn.2d 576, 586, 327 P.3d 46 (2014).

instruction is required when the evidence presented indicates the defendant's actions constitute a continuing course of conduct. State v. Lee, 12 Wn. App. 2d 378, 393, 460 P.3d 701, review denied, 195 Wn.2d 1032, 468 P.3d 622 (2020). Whether or not a unanimity instruction was required in a particular case is a question of law reviewed de novo. Id.

To assess whether a Petrich instruction is required, the court must examine the evidence in the light most favorable to the proponent of the instruction and determine whether the evidence demonstrates more than one violation of the statute by comparing what the statute requires with what the evidence proves. State v. Hanson, 59 Wn. App. 651, 656-57, 800 P.2d 1124 (1990). When the defendant is the proponent of the instruction, taking the evidence in the light most favorable to the defendant requires determining "whether the evidence is such that jurors *could* find more than one event sufficient to convict," which in turn means "it is necessary to view it in the light most favorable to the State." Id. at 656 n.6. "If the evidence proves only one violation, then no Petrich instruction is required, for a general verdict will necessarily reflect unanimous agreement that the one violation occurred." Id. at 657. But "if the evidence discloses two or more violations, then a Petrich instruction will be required, for without it some jurors might convict on the basis of one violation while others convict on the basis of a different violation." Id.

We use common sense to determine whether the evidence demonstrates multiple distinct acts or a continuing course of conduct. Lee, 12 Wn. App. 2d at

393; State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). This includes evaluating "whether the evidence shows conduct occurring at one place or at many places, within a brief or long period of time and to one or multiple different victims, and whether the conduct was intended to achieve a single or multiple different objectives." Lee, 12 Wn. App. 2d at 393. We have found a continuing course of conduct where multiple acts of assault were committed with a single purpose against one victim during a short period of time. Id. at 394.

For violations of a no-contact order, the nature of the crime "leads to a reasonable conclusion that the Legislature intended that the offense be a continuing crime." State v. Spencer, 128 Wn. App. 132, 137, 114 P.3d 1222 (2005). The core purpose of the law is to protect an individual from domestic abuse. "Once a defendant enters the prohibited zone, the crime begins but is not complete—it continues. As long as the defendant remains within the prohibited zone, he continues to violate the no-contact order." Id. at 137-38.

In this case, from the outset, the State presented the events of November 1 as a continuing course of conduct rather than as multiple, separate no-contact order violations requiring an election; the certification of probable cause described the events as ongoing over a short period of time, and in its opening statement, the State traced a similar timeline for the jury. The defense trial brief

likewise included a timeline of events occurring with Jernigan's 911 call, followed 5 minutes later by Foss's 911 call, and 6 minutes later by Ramirez's 911 call.[6]

Sanchez argues that the evidence at trial did not bear out that the events took place over a short period of time because there was no evidence of the specific times of the 911 calls, so the evidence established three distinct violations in different locations and separated by several hours. It is true that the times of the 911 calls were not established at trial. However, viewed in the light most favorable to the State, the evidence at trial nevertheless establishes only one continuing course of events that constituted a no-contact order violation, consistent with the parties' initial pre-trial presentations.

At trial, Jernigan described calling 911 after witnessing an altercation involving people in a gray Mercedes at 272nd Street and Military Road while he was driving home from work. Foss testified he lived at 3630 S. 249th Street in Kent. Looking out his window, he saw a man and a woman in a gray Mercedes fighting and called 911. In Ramirez's 911 call, she stated she was "on Military and 249th" and that the address 3629 was where Sanchez was and "the cops

---

[6] According to the State, Sanchez invited error, thus foreclosing review, because he "repeatedly told the trial court that the incidents witnessed by Jernigan and Foss both occurred shortly before Ramirez called 911, and never retracted that accurate characterization prior to closing arguments." Br. of Resp't at 22. The doctrine of invited error prohibits a party from setting up an error at trial and then alleging error on appeal. State v. Henderson, 114 Wn.2d 867, 870, 792 P.2d 514 (1990). Invited error requires affirmative action by the defendant. In re Pers. Restraint of Thompson, 141 Wn.2d 712, 724, 10 P.3d 380 (2000). Here, however, Sanchez never affirmatively misled the trial court. Pretrial, the parties had a similar understanding of the timeline of events. Sanchez initially identified the State's failure to elicit evidence of a clear timeline as an issue of jury unanimity regarding assault. But even after the court denied a Petrich instruction for assault, Sanchez continued to request a unanimity instruction, alleging the evidence established multiple incidents on November 1. There was no invited error.

11

need to go there." Officer Partido testified that he responded to Ramirez's 911 call around 3 p.m. on November 1 and met Ramirez around 24700 Military Road south, about two blocks from 249th Street. According to Partido, Ramirez was driving a gray Mercedes and appeared to have been crying and had redness on the right side of her face and her shoulder. This evidence points to Sanchez entering the prohibited zone and remaining within, constituting a single continued violation of the no-contact order.

Sanchez claims the record "definitively disclosed at least two separate incidents: the one that prompted Ms. Offut Ramirez's 911 call around 3:00 p.m. and the one that prompted Mr. Foss's 911 call around 6:45 p.m."[7] But Officer Lontz did not testify as to which 911 call he was responding. Rather, he testified only that he was dispatched to 3629 South 249th Street and that he was looking for Sanchez at that address. Officer Lontz spoke with several people who were standing outside, including Foss, but never made contact with Sanchez or Ramirez. This evidence establishes only that Lontz responded to the 3629 South 249th Street and was looking for Sanchez. Neither Officer Lontz nor anyone else testified as to any additional incident that could have established a no-contact order violation beyond the continuous course of events established by testimony

---

[7] Moreover, this later time was confirmed by Officer Lontz only in response to a question by the State:

> Q  . . . I'm going to turn your attention to November 1st, 2021. Were you on duty around 6:45 p.m. on November 1st, 2021?
> A  Yes.

of Jernigan, Foss, and Partido, which Partido's testimony tied to the 3:00 p.m. time frame.

The evidence demonstrates only one no-contact order violation, a continuing course of conduct. Thus, the court did not err by failing to include a unanimity instruction.

II.     Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, the defendant must demonstrate that defense counsel's representation fell below an objective standard of reasonableness and the deficient representation resulted in prejudice. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice requires that "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." Id. When ineffective assistance of counsel is premised on failure to make a motion, defendant must show that the motion likely would have been granted. In re Pers. Restraint of Davis, 152 Wn.2d 647, 711, 101 P.3d 1 (2004). We need not consider both deficiency and prejudice if a petitioner fails to prove one. In re Pers. Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). Sanchez claims counsel was ineffective for failing to request the proper unanimity instruction and failing to move for a mistrial after dismissal of Count 1.

A. Failure to Request the Proper Unanimity Instruction

Sanchez argues ineffective assistance because counsel requested the unanimity instruction for assault rather than violation of the no contact order.[8] But there is no deficiency in failing to request a unanimity instruction where none was required. Moreover, because no Petrich instruction was required, failing to ask for one caused no prejudice.

B. Failure to Move for a Mistrial

Sanchez also claims he received ineffective assistance because his counsel failed to move for a mistrial on Count 2 after the court dismissed Count 1. According to Sanchez, "[t]his resulted in the jury hearing all the evidence related to Count 1 in evaluating whether the prosecution proved Count 2 beyond a reasonable doubt," and the court likely would have granted a mistrial if requested. We do not agree that counsel was deficient, or that there was prejudice because the court likely would not have granted a mistrial.

A trial court should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). In considering a mistrial, courts look to factors including (1) the seriousness of the

---

[8] Sanchez notes the State may argue defense counsel "invited error" by proposing the incorrect unanimity instruction. Sanchez disagrees with this interpretation, claiming "[a]lthough the defense-proposed instruction incorrectly focused on alleged acts of assault, rather than the corresponding no-contact order violations, the trial court outright rejected any unanimity instruction at all." Sanchez explains he "does not complain of any instruction he proposed," but "challenges the trial court's failure to give a unanimity instruction." He raises ineffective assistance of counsel as an alternative if we conclude that counsel invited error.

14

irregularity (2) whether challenged evidence was cumulative of other evidence properly admitted; and (3) whether the irregularity could be cured by an instruction. State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992); State v. Babcock, 145 Wn. App. 157, 163, 185 P.3d 1213 (2008).

Here, the irregularity is the dismissal of Count 1 after jurors had already heard evidence on that count. But Sanchez had previously noted the relatively weaker evidence on that count based on the alleged conduct on October 31. During pretrial motions, Sanchez argued for severance of the two charges because Count 2 for the alleged conduct on November 1, "is a much stronger case for the State" and "[if] these Counts are joined, there's a substantial risk that the jury will substitute gaps in evidence from [Count 1] by the stronger evidence in [Count 2]." Dismissal of Count 1, therefore, eliminated Sanchez's original concern that evidence of Count 2 would be misused to establish Count 1. Instead, counsel requested a written instruction, "Count 1 is no longer being presented for your consideration. You may not consider any evidence that was presented as to the alleged events on October 31st, 2021 during your deliberations." The State did not object, and the trial court gave the instruction as proposed. "We presume that a jury will follow the instructions provided to it." State v. Mohamed, 186 Wn.2d 235, 244, 375 P.3d 1068 (2016). Neither party referenced the events of October 31 during their closing arguments. Thus, Sanchez's trial counsel mitigated any prejudice without moving for a mistrial, which would have allowed the State to retry the case and perhaps persuade

15

Ramirez to testify. Sanchez cannot demonstrate "the absence of legitimate strategic or tactical reasons" for declining to move for a mistrial. See State v. Vazquez, 198 Wn.2d 239, 248, 494 P.3d 424 (2021).

Moreover, the weak evidence from Count 1 was unlikely to influence the jury's deliberation on Count 2. The evidence supporting the two counts did not overlap. Officer Westland provided the evidence about the mint green Subaru at the apartment complex on October 31 in support of Count 1. None of this evidence pertained to the events of November 1 that were charged in Count 2. The jury could easily distinguish and separate the evidence of the two counts.

According to Sanchez, the lack of overlap is problematic because the evidence relating to Count 1 was the only evidence of prior bad acts admitted during the first phase of the trial. But the trial court dismissed Count 1 because the State failed to prove that Sanchez had violated the no-contact order. The State's evidence established only that Sanchez was in his vehicle in the vicinity of Ramirez's apartment complex. Merely driving near the complex is not a "bad act."

Given this weak evidence, it is unlikely that had Sanchez's counsel requested a mistrial, the court would have granted it, as required for Sanchez to establish prejudice, the second prong of an ineffective assistance claim. The jury instruction remedied any prejudice from the evidence of Count 1 and its dismissal. When denying the motion to sever the charges, the trial court explicitly stated that "the Court's instructions to the jury to count each Count separately

16

and to consider the evidence that has been presented for each Count separately from the other Count is curative."[9] Given the court's determination that the instruction could mitigate the potential impact of the stronger Count 2 evidence on the jury's deliberations on Count 1—a decision within the court's discretion to make[10]—the trial court was unlikely to have granted a mistrial after dismissing the weaker count. As a result, Sanchez cannot establish prejudice and his ineffective assistance of counsel claim fails.

### III. Hearsay Evidence

Sanchez argues that Officer Partido's testimony about Ramirez's 911 call was inadmissible hearsay and improperly admitted. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is not admissible except as provided by the rules of evidence, other court rules, or statute. ER 801(c), 802.

We review evidentiary rulings for abuse of discretion. State v. Quaale, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). Whether a statement is hearsay is a question of law reviewed de novo. State v. Edwards, 131 Wn. App. 611, 614, 128 P.3d 631 (2006).

Ramirez did not testify and, therefore, did not authenticate her 911 call. Instead, the State introduced the call through Officer Partido. The State asked,

---

[9] The trial court instructed the jury "Count 1 is no longer being presented for your consideration. You may not consider any evidence that was presented as to the alleged events on October 31st, 2021, during your deliberations."

[10] Like the decision to grant or deny severance, review of a trial court's denial of a mistrial is subject to review for abuse of discretion. Emery, 174 Wn.2d at 765.

"Based on just the recording—again, just yes or no. Are you able to determine whether the 911 call you reviewed is related to the call you were dispatched for?" To which Officer Partido responded, "yes." Before playing the audio of the call, the State again asked, "Is this a recording of the 911 call that you recognize to be connected to this incident?" Partido answered "yes."

Sanchez acknowledges that Officer Partido "did not directly repeat" what Ramirez said, but "his testimony still relayed her statements to the jury. He essentially confirmed she made statements to him consistent with her 911 call." In support of this argument, Sanchez cites State v. Johnson, 61 Wn. App. 539, 544-45, 811 P.2d 687 (1991), and State v. Hudlow, 182 Wn. App. 266, 331 P.3d 90 (2014). In Johnson, a law enforcement officer testified to information from a confidential informant in an inadmissible search warrant affidavit. 61 Wn. App. at 544. The court stated held that "a law enforcement officer's testimony concerning an informant's or eyewitness's statement is inadmissible hearsay even where the officer does not repeat the contents of the statement, but only testifies that the statement led police to investigate or arrest the defendant." Id. at 546. In Hudlow, a detective testified about the contents of a phone call between a confidential informant and the defendant. 182 Wn. App. at 275. Because the confidential informant did not testify at trial, none of the participants in the conversation related its contents. Id. The appellate court reiterated the analysis from Johnson that "where the inescapable inference from the testimony is that a nontestifying witness has furnished the police with evidence of the defendant's guilt, the

testimony is hearsay, notwithstanding that the actual statements made by the nontestifying witnesses are not repeated." Id. at 280. Inadmissible evidence could not be made admissible by allowing the substance of a witness's testimony to incorporate out-of-court statements by a declarant who did not testify. Id. at 281.

Here, however, Officer Partido's statements were not out-of-court statements offered for the truth of the matter asserted. While testifying as a witness in court, Partido answered questions posed to him about the 911 call and whether the 911 call was related to the reason for his dispatch on November 1. He did not repeat or even allude to statements made by a non-testifying party. And, unlike the officers' testimony in Johnson and Hudlow, his testimony did not create the inference that Ramirez had provided him with evidence of Sanchez's guilt or incorporate out-of-court statements from Ramirez. Other than noting that Ramirez arrived in a gray Mercedes and identified herself, Partido's testimony described Ramirez's appearance. Officer Partido confirmed that the call reflected the incident he responded to on Military Road. This testimony was not inadmissible hearsay, and the trial court did not abuse its discretion in overruling Sanchez's objections.

IV.    Cumulative Error

Finally, Sanchez argues for reversal of his conviction due to cumulative error. The cumulative error doctrine requires reversal when the combined effect of several errors denies the defendant a fair trial. State v. Weber, 159 Wn.2d

19

252, 279, 149 P.3d 646 (2006). "The doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial." Id. As the trial court did not err, the cumulative error doctrine does not apply.

## V.    Victim Penalty Assessment

At the time Sanchez was sentenced, in March 2022, former RCW 7.68.035 (2022) required the sentencing court to impose a mandatory VPA of $500 for a felony or gross misdemeanor. After briefing was completed, RCW 7.68.035 was amended by ENGROSSED SUBSTITUTE HOUSE BILL (ESHB) 1169, LAWS OF 2023, ch. 449. ESHB 1169 provides that a court shall not impose the VPA if the defendant is found indigent at the time of sentencing, and also allows courts to waive VPAs imposed prior to the effective date upon motion by the defendant. Based on this new legislation, Sanchez moved this court to strike the VPA the trial court imposed on him. In supplemental briefing, the State agreed with Sanchez that the trial court should strike the VPA.

We affirm Sanchez's conviction and remand for the trial court to strike the VPA imposed as part of his sentence.

_Chung, J._

WE CONCUR:

_Birk, J._     _Mann, J._