# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON, )
                      )    No. 74663-4-I
         Respondent, )
                      )    DIVISION ONE
     v.                 )
                      )    UNPUBLISHED OPINION
CORTNEY JAMES STAHL, )
                      )
         Appellant. )    FILED: June 5, 2017
                      )

APPELWICK, J. — Stahl was convicted of second degree rape, indecent liberties, assault in the third degree, and assault in the fourth degree. Stahl argues that he was denied his right to a unanimous verdict, that the prosecutor committed misconduct, and that his counsel was ineffective. He also makes numerous arguments in a statement of additional grounds for review. We affirm.

## FACTS

Cortney Stahl resided in a greenbelt where a number of homeless people resided. On July 9, 2015, camp resident Jose Leon left the greenbelt briefly for roughly 30 to 40 minutes. When he returned, Leon observed his friend, Alicia Nickerson, shaking and crying. Nickerson told Leon that Stahl had been "manhandling her" and grabbing her throat.

Leon confronted Stahl about Nickerson's accusations. Stahl then hit both Leon and Nickerson. After Leon asked him to stop, Stahl then appeared to calm down and left the scene.

But, Stahl returned 20 to 30 minutes later and was more aggressive. He began using a piece of wood, similar to a two by four, to destroy Leon's shelter. He then began beating both Leon and Nickerson with the wood. Police arrived at the scene.

Police were informed about a separate incident involving Stahl and another resident, J.S. J.S. knew Stahl, and had received heroin from Stahl the day before. J.S. testified that she had woken up when Stahl attemped to put his penis in her mouth. She tried to get up, but Stahl grabbed her and held her down as he masturbated.

Another camp resident, N.W. reported an incident involving Stahl to the police. N.W. testified that Stahl had become angry with her, and threw a thermos and juice at her while the two were in a tent. As N.W. tried to crawl away from Stahl, he grabbed her between her legs by her vagina. N.W. testified that it felt like Stahl was trying to insert his fingers into her vagina. N.W. was able to get away.

The State charged Stahl with five crimes: indecent liberties and rape in the second degree for his acts against J.S., assault in the third degree for his acts against Leon, assault in the fourth degree for his acts against Nickerson, and indecent liberties for his acts against N.W. The jury found Stahl guilty on all counts, but the indecent liberties conviction involving J.S. was vacated for double jeopardy reasons. Stahl appeals.

DISCUSSION

Stahl makes three arguments in his brief. First, he argues that he was denied his right to a unanimous jury verdict. Second, he argues that the prosecutor committed misconduct. Third, he argues that defense counsel was ineffective for failing to object to the prosecutor's statements that he claims amounted to misconduct. He also makes various arguments in a statement of additional grounds for review (SAG).

I. Right to a Unanimous Jury

Stahl first argues that, with respect to the conviction on count four, the assault on Nickerson, his right to a unanimous jury verdict was violated. He claims this is so, because the State did not identify which of the two violent acts constituted the alleged assault, and the trial court did not give a unanimity instruction.

A defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed. State v. Crane, 116 Wn.2d 315, 324-25, 804 P.2d 10 (1991), overruled on other grounds by In re Pers. Restraint of Andress, 147 Wn.2d 602, 56 P.2d 981 (2002). When the prosecutor presents evidence of several acts that could form the basis of one count charged, either the State must tell the jury which act to rely on in its deliberations, or the court must instruct the jury to agree on a specified criminal act. Id. at 325. The failure to instruct the jury on the required unanimity is reversible error unless the failure is harmless. State v. Bobenhouse, 143 Wn.

App. 315, 325, 177 P.3d 209 (2008). Since this is an error of constitutional magnitude, it may be raised for the first time on appeal. Id.

However, a unanimity instruction is not necessary where the evidence indicates a " 'continuing course of conduct.' " State v. Garman, 100 Wn. App. 307, 313, 984 P.2d 453 (1999) (quoting State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)). To determine whether criminal conduct constitutes one continuing act, we evaluate the facts in a " 'commonsense manner.' " Id. (quoting State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989)). A continuing course of conduct requires an ongoing enterprise with a single objective. Id. But, where evidence involves conduct at different times and places, or different victims, then the evidence tends to show distinct acts. Id.

Leon testified that Stahl hit Nickerson while in the encampment.[1] Stahl then left the scene for approximately 20 to 30 minutes. Upon Stahl's return, he again started hitting Leon and Nickerson. Stahl claims that this is not a continuing course of conduct.

But, we need not decide whether any error occurred, because any such error would have been harmless. An error that violates a defendant's right to a unanimous verdict will not be upheld unless the error is harmless beyond a reasonable doubt. State v. Coleman, 159 Wn.2d 509, 512, 150 P.3d 1126 (2007). The presumption of error is overcome only if no rational juror could have a reasonable doubt as to any of the incidents alleged. Id. And, here, the

---

[1] Stahl notes that Nickerson did not testify, and the only testimony regarding the specifics of the assault came from Leon.

evidence that the two assaults occurred went uncontroverted. Regarding the first instance, Leon testified that Nickerson told him that Stahl had been "manhandling" her on her neck and back, and that she appeared distraught. And, before Stahl first left the scene, Leon saw Stahl beat Nickerson. Regarding the second incident, Leon testified that he saw Stahl beat Nickerson with a piece of wood similar to a two by four.

In addition, corroborating Leon's testimony about the incident, a neighbor whose property bordered the encampment testified that he heard a woman yelling and saw a scuffle in the encampment and called the police. The neighbor testified that the scuffle involved two men and a woman. He testified that one man was the aggressor. The woman was screaming in distress. The woman later came to the neighbor for help, and told the neighbor that a man was beating her up. Stahl points to no evidence that controverts the testimony from Leon or the neighbor. Any error was harmless.

We hold Stahl's right to a unanimous jury verdict was not violated.

## II.  Prosecutorial Misconduct

Fuller next argues that the prosecutor committed misconduct during his closing argument.

The defendant bears the burden of proving that the prosecutor's alleged misconduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The burden to establish prejudice requires the defendant to prove that there is a substantial likelihood that the instances of misconduct affected the jury's verdict. State v. Thorgerson, 172 Wn.2d 438, 442-

43, 258 P.3d 43 (2011). The failure to object to an improper remark constitutes a waiver of error unless it is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. Id. at 443. Stahl concedes that he did not object to any of the statements he alleges were misconduct. Therefore, his arguments are waived unless the remarks were flagrant, ill-intentioned, and unable to be cured by a supplemental instruction. Thorgerson, 172 Wn.2d at 443.

A. Mischaracterization of Defense's Argument

Stahl argues that the prosecutor committed misconduct by mischaracterizing Stahl's argument so as to appeal to jurors' prejudices. Creating straw man arguments does not comport with the prosecutor's duty to seek convictions based on probative evidence and sound reason. State v. Thierry, 190 Wn. App. 680, 694, 360 P.3d 940 (2015), review denied, 185 Wn.2d 1015, 368 P.2d 171 (2016).

In his closing argument, Stahl repeatedly referred to victims J.S. and N.W. He stated that J.S. had "chosen this life of the heroin and the living outside as opposed to getting treatment." As part of the defense's narrative that N.W. had fabricated her allegations due to Stahl stealing N.W.'s heroin, defense counsel stated:

> She tells us that, well, she uses heroin not daily but not too much. That again, I mean can you -- would a heroin addict minimize how much they use? How important is heroin to her? Well, she's chosen heroin over everything else in her life. Heroin is more important to her than anything.

6

In rebuttal, the prosecutor stated that the defense had attempted to dehumanize the victims through such statements. Stahl claims that he did no such thing and that the prosecutor's statements mischaracterized the defense's arguments.

But, the prosecutor's rebuttal was responsive to the defense's statements. The prosecutor stated, accurately, that the defense referenced that the victims had chosen a life of heroin. The prosecutor's rebuttal asked the jury to reject any inference that the victims "don't deserve your consideration." The prosecutor's remarks were not an improper straw man. They were an attempt to protect favorable witnesses' credibility in the face of the defense's numerous remarks on their heroin usage. The prosecutor did not commit misconduct by mischaracterizing the defense's argument.

B. Appeal to Jurors' Sympathies

Stahl also contends that the prosecutor improperly told the jury that policy considerations should inform their verdict. Specifically, Stahl argues that, by stating that the defense dehumanized the homeless victims, and that they were "just as deserving of the protection of the law as anyone else," the prosecutor asked the jury to reach its verdict based on policy concerns. This, Stahl contends, mischaracterized his argument and appealed to jurors' sympathies.

Stahl equates this case to previous cases that have overturned convictions due to "send a message" closing arguments. For example, in State v. Bautista-Caldera, , the court found reversible error when the prosecutor asked the jury to convict to let " 'children know that you're ready to believe them and [e]nforce the law on their behalf.' " 56 Wn. App. 186, 195, 783 P.2d 116 (1989)

(alteration in original). State v. Ramos, 164 Wn. App. 327, 338, 342, 263 P.3d 1268 (2011) was similar. The court overturned after the prosecutor told the jury: "This is also why we are here today, so people can go out there and buy some groceries . . . or go to a movie . . . and not have to wade past the coke dealers in the parking lot." Id. at 338. Stahl claims that the prosecutor's statements in his case were analogous.

But, here the prosecutor's statements were the opposite. In Ramos and Bautista-Caldera, the prosecutors asked the jury to use policy concerns to inform their decision. But, here the prosecutor stated that homeless victims were "just as deserving of the protection of the law." He did not state or suggest that homelessness should give the victims more protection under the law, or that finding Stahl guilty would send a policy message regarding concern for homeless individuals. The prosecutor also asked the jury not to accept the defense's attempt to "dehumanize" the victims. But, this too is an attempt to push back on the defense's attack on the victims' credibility. The prosecutor's comments were not improper "send a message" comments. Rather, they were acceptable attempts to address the credibility issues raised by the defense.

C. Vouching for Witness Credibility

Finally, Stahl argues that the prosecutor vouched for witness credibility. He points to the prosecutor's comment in closing arguments that J.S. and N.W. were forthcoming in their motives for testifying. Specifically, the prosecutor stated: "But, you know, they were pretty honest too that they weren't here trying

to get Mr. Stahl into trouble, you know. To some of them he's still a friend, and really they hope that he can just get some help."

It is misconduct for a prosecutor to personally vouch for the credibility of a witness. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). But, a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence. State v. Lewis, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). And, courts review comments made by a prosecutor during closing argument in the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

Although the prosecutor described the witnesses' actions as "honest," the context shows that he was not personally vouching for their credibility. The prosecutor used the term when addressing the witnesses' delay in reporting the crimes. The defense's theory was that this delay suggested a lack of credibility. The prosecutor described the witnesses as honest one sentence after conceding that the victims did not immediately report Stahl to the police. The "honest" comment was a reference to the witnesses acknowledging they delayed in reporting the crimes, and testifying, as J.S. did, that she did not want to get Stahl in trouble. The prosecutor did not vouch for the credibility of the witnesses by merely highlighting that their actions and testimony were consistent.

Because we conclude that none of the prosecutor's comments were improper, we need not decide whether they were prejudicial. The prosecutor did not commit misconduct.[2]

## III.   Statement of Additional Grounds for Review

We discern five legal arguments from Stahl's SAG. First, he argues that counsel was ineffective for failing to investigate and failing to propose a lesser included offense jury instruction. Second, he argues that he was denied his right to testify in his own defense. Third, he argues that he was denied his right to a speedy trial. Fourth, he argues that he was denied his right to conflict free counsel. Finally, he argues that cumulative error warrants reversal.

### A.  Ineffective Assistance of Counsel

In his SAG, Stahl argues that his attorney was ineffective for failing to adequately investigate potential witnesses and the alleged crime. Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. In re Pers. Restraint of Rice, 118 Wn.2d 876, 889, 828 P.2d 1086 (1992). But, Stahl fails to identify the specific exculpatory information that such investigations would have revealed. He speculates that employing an investigator might have been helpful. But,

---

[2] Stahl contends that his counsel was ineffective by failing to object to the prosecutor's remarks that he argues were misconduct. To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) defense counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). But, because we hold that the prosecutor's comments were not improper, there was neither deficient performance, nor prejudice to Stahl as a result of deficient performance. Stahl did not receive ineffective assistance of counsel.

10

courts apply a strong presumption that counsel was effective. In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). Stahl's speculations that other actions might have helped his defense do not overcome this strong presumption.

Stahl next claims his counsel was ineffective for failure to propose lesser included offense jury instructions. But, Stahl fails to identify what lesser included offense his counsel could have or should have proposed instructions for. Stahl therefore has not overcome the strong presumption that counsel was effective.

B. Right to Testify

Stahl also claims that his attorney denied Stahl his right to testify in his own defense. A defendant has a fundamental constitutional right to testify in his or her own defense. Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). On a federal level, the right to testify is implicitly based in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Id. The Washington constitution explicitly protects the right to testify. WASH. CONST. art. I, § 22.

Mere allegations by a defendant that his attorney prevented him from testifying are insufficient to justify reconsideration of the defendant's waiver of the right to testify. State v. Robinson, 138 Wn.2d 753, 760, 982 P.2d 590 (1999). Defendants must show some particularity to give their claims sufficient credibility to warrant further investigation. Id.

Stahl claims that his attorney's inadequate preparation forced Stahl to refuse to testify. In a declaration filed below, Stahl stated that his attorney

directly asked him if he would like to testify at trial, and even told Stahl that he had "credibility." Stahl admitted in that declaration that he explicitly declined to testify when asked, because he felt that his attorney had not adequately prepared him to testify. Given that Stahl admitted below that his attorney offered him the opportunity to testify, he was not denied his right to testify in his own defense. Any arguments about inadequate preparation go to ineffective assistance of counsel, which we addressed above.

C. Speedy Trial

Stahl argues that the trial court's grant of continuances violated CrR 3.3, and he was denied his constitutional right to a speedy trial. CrR 3.3(b)(1)(i) generally requires that trial occurs within 60 days of arraignment if the defendant is detained in jail. CrR 3.3 accords with the United States Supreme Court's determination that states can prescribe reasonable periods for commencement of trials consistent with constitutional standards. State v. Ollivier, 178 Wn. 2d 813, 823, 312 P.3d 1 (2013).

The scheduling order below originally set Stahl's trial date for September 23, 2015, which was within 60 days of arraignment. On September 3, 2015, after the State indicated that it would be adding two additional charges against Stahl, Stahl's attorney requested a continuance so that he could be adequately prepared for trial. Stahl personally objected to his lawyer's request, but the trial court was persuaded by trial counsel's need to prepare to defend against the new charges, and it set a new trial date for October 5, 2015. On September 30, 2015, the State added amended the charges. The trial court ordered a two week

trial continuance for good cause to October 19, 2015. Stahl's attorney was granted this second continuance in order to adequately prepare, but Stahl himself opposed this continuance.

On appeal, a trial court's grant or denial of a motion for continuance will not be disturbed absent a showing of manifest abuse of discretion. State v. Campbell, 103 Wn.2d 1, 14, 691 P.2d 929 (1984). A trial court properly exercises its discretion under CrR 3.3 when it grants counsel's request to waive trial in 60 days, over a defendant's objection, to ensure effective representation at trial. See id. at 15. That was the case here. The trial court made clear that the new charges filed against Stahl would require additional preparation for defense counsel, and that this warranted a continuance to October 5, and again to October 19. Stahl notes that trial did not actually occur until roughly six weeks after the October 19 trial date. But, he fails to identify any part of the record that shows whether this was requested by one party, both parties, caused by the court's calendar, or for any other reason. He therefore has not demonstrated that the trial court violated CrR 3.3.

Stahl also argues that his constitutional right to a speedy trial was violated. Compliance with CrR 3.3 does not guarantee that constitutional rights were not violated. State v. Ollivier, 161 Wn. App. 307, 313, 254 P.3d 883 (2011) aff'd, 178 Wn.2d 813, 312 P.3d 1 (2013). We review constitutional speedy trial claims de novo. State v. Shemesh, 187 Wn. App. 136, 144, 347 P.3d 1096, review denied, 184 Wn.2d 1007, 357 P.3d 665 (2015).

13

As a threshold matter, to show a violation of constitutional speedy trial rights, a defendant must show that the length between the accusation and trial crossed a line from ordinary to presumptively prejudicial. Ollivier, 178 Wn.2d at 827. The passage of time, complexity of charges, and reliance on eyewitness testimony are relevant to whether a delay was presumptively prejudicial. State v. Iniguez, 167 Wn.2d 273, 292, 217 P.3d 768 (2009). Stahl was arraigned on July 25, 2015. But, the State amended the charges against Stahl on September 30, 2015. Trial occurred in late November and early December 2015. Thus, roughly four months passed between the initial accusations against Stahl and his trial, and roughly two months passed between the filing of additional charges and his trial. This is a reasonable timespan between accusations and trial, and is not presumptively prejudicial. See State v. Corrado, 94 Wn. App. 228, 233-34, 972 P.2d 515 (1999) (surveying decisions and concluding that delays of eight months to one year are typically the threshold for delays to be deemed presumptively prejudicial.). And, this delay was in part caused by the difficulty in completing witness interviews, and the amendment of charges over two months after the original charges were filed. Stahl's constitutional right to a speedy trial was not violated.

D. Right to conflict free counsel

Stahl argues that his appointed counsel had an apparent or actual conflict that effectively denied Stahl's right to counsel. The Sixth Amendment right to counsel includes the right to conflict free counsel. Dhaliwal, 150 Wn.2d at 566. But, Stahl does not explain the specific conflict, actual or apparent, that his

14

counsel had. His argument primarily discusses his dissatisfaction with counsel's actions, not any conflicts of interest that were present. We therefore reject his arguments on this issue.

E. Cumulative Error

Stahl also argues cumulative error. Cumulative error warrants reversal when there have been several trial errors that standing alone may not be sufficient to justify reversal, but when combined may deny a defendant a fair trial. State v. Grieff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). But, because we do not find multiple errors, there can be no cumulative error.

We affirm.

Appelwick, J

WE CONCUR:

Trickey, A.C.J

Cox, J.