[No. 18995–6–I. Division One. March 14, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. LOVELESS J. GOODEN, *Appellant.*

*Helen A. Anderson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Katherine Flack, Deputy,* for respondent.

WEBSTER, J.—Loveless J. Gooden appeals from his conviction of two counts of promoting prostitution in the first degree. He claims that he was denied his right to a unanimous jury. We do not agree and affirm his conviction on each of the two counts.

## STATEMENT OF FACTS

In November of 1984, "W" and her best friend "V", both 16 years of age, ran away from their homes in Black Diamond. In late November or early December of 1984, the girls met Gooden at a bus stop in Seattle. They stayed at Gooden's apartment for approximately 1½ weeks. During their first night at Gooden's apartment, Gooden took all of W's money.

Gooden drove the girls to Aurora Avenue North and told them: "Let's get out there and make some money". He told

them to charge $30 for oral sex and to ask for more if they had vaginal intercourse. W recalled Gooden instructing V to lie about her age and tell police, if questioned, that she was 18.

W described an incident where a man invited them in his car and requested them to perform oral sex with him for money. W was in the backseat as V had oral sex with the man; W saw the man give money to V for her services. W later saw V give the money to Gooden. On that same night, W performed oral sex with a male customer for $25. Upon his request, she gave the money to Gooden. After completing each act, the girls returned to a bus stop on Aurora Avenue and waited for Gooden; if he was not there, they engaged other customers.

W testified that she committed her last act of prostitution in December of 1984 when Gooden drove her and V to a motel in Chinatown where they were to wait in an entryway for potential customers. The following day, Gooden rented a motel room on Pacific Highway South. Gooden talked about making big money and said if they made enough he would take the girls to Spokane and Portland and California, buy them nice clothes, and buy a Cadillac. W called her mother from the motel room and said she wanted to come home; her grandmother picked her up from the motel the next morning.

At trial, a detective testified that Aurora Avenue North, Chinatown and Sea–Tac strip, including Pacific Highway South, were heavy prostitution areas in King County. V gave a statement to the detective; portions of that deposition corroborating W's testimony regarding their friendship, their leaving Black Diamond, and their meeting Gooden were read to the jury.

### Unanimous Jury Verdict

The right to a unanimous verdict is derived from the fundamental constitutional right to a trial by jury; it may be raised for the first time on appeal. *State v. Handyside*, 42 Wn. App. 412, 415, 711 P.2d 379 (1985); *State v. Gitchel*,

41 Wn. App. 820, 706 P.2d 1091, *review denied,* 105 Wn.2d 1003 (1985); *State v. Fitzgerald,* 39 Wn. App. 652, 655, 694 P.2d 1117 (1985); *State v. Russell,* 101 Wn.2d 349, 678 P.2d 332 (1984). Thus, Gooden's appeal is proper despite his failure to request that the State elect which acts it relied upon for his convictions and despite his failure to request a unanimous jury instruction.

 A unanimous verdict is assured if either (1) the State elects the act upon which it relies for the conviction, or (2) the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *State v. Petrich,* 101 Wn.2d 566, 572, 683 P.2d 173 (1984); *see also State v. Stark,* 48 Wn. App. 245, 738 P.2d 684, *review denied,* 109 Wn.2d 1003 (1987); *Handyside,* at 415; *Gitchel,* at 822; *Fitzgerald,* at 655–56. When the State fails to make an election, the jury instruction must be given to ensure unanimity. *Petrich,* at 572. As long as the instruction is given, the jury need not specify the act upon which it agrees. *Stark,* at 251–52. The Washington Supreme Court in *Petrich* carves out an exception for a continuing course of conduct. It states:

> Under appropriate facts, a continuing course of conduct may form the basis of one charge in an information. But "one continuing offense" must be distinguished from "several distinct acts," each of which could be the basis for a criminal charge. To determine whether one continuing offense may be charged, the facts must be evaluated in a commonsense manner.

(Citations omitted.) *Petrich,* at 571.

Although the statute regarding promoting prostitution in the first degree permits conviction for each distinct act, it also contemplates a continuing course of conduct: instituting, aiding, or facilitating a prostitution enterprise. A person promotes prostitution in the first degree if he knowingly "[a]dvances or profits from prostitution of a person less than eighteen years old." RCW 9A.88.070(1)(b).

> A person "advances prostitution" if . . . he causes or aids a person to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a *prostitution enterprise,* or engages in any other conduct designed to *institute, aid, or facilitate an act or enterprise of prostitution.*

(Italics ours.) RCW 9A.88.060(1).

> A person "profits from prostitution" if . . . he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of prostitution activity.

RCW 9A.88.060(2).

*Petrich* cites two cases in support of the continuing offense theory. One such case is *United States v. Berardi,* 675 F.2d 894 (7th Cir. 1982), where Berardi committed three acts designed to intimidate a witness at trial, but was charged with only one count of obstruction of justice. The court found that Berardi's single objective was to influence the witness; thus, his acts constituted a continuing course of conduct.

> The three alleged acts of obstruction occurred within a relatively short period of time, were committed by one defendant, involved a single witness, and were in furtherance of Berardi's solitary object of influencing Heiden not to reveal to the grand jury the circumstances of the property assessment reductions.

*Berardi,* at 898. In *Berardi,* a jury instruction which was sufficient to remove the threat of a nonunanimous verdict was given. The court found that to be a significant factor in deciding whether the jurors relied upon different acts to convict Berardi. *Berardi,* at 899. The other continuing offense case noted in *Petrich* involved a gang rape over a 1–hour period in the back of a moving van with repeated acts of sexual intercourse. *People v. Mota,* 115 Cal. App. 3d 227, 171 Cal. Rptr. 212 (1981).

■ Promoting prostitution is a continuing course of conduct which falls within the *Petrich* exception. In the case sub judice, the State needed only to prove that Gooden advanced or promoted prostitution; the State met that burden. Gooden used W and V to promote an enterprise with a single objective. That objective was to make money. The enterprise or continuing course of conduct occurred over a 10–day period in which Gooden was in constant association with the girls. He took all of W's money, provided shelter for both of the girls, bought them new clothes, told them what to charge for various sex acts and what to say when questioned about their age, drove them to spots known for prostitution or rented them motel rooms, and had them report back and give him the money they earned.

This case is unlike the *Petrich* case which involved numerous incidents of criminal conduct with the same child victim; child molestation, unlike promoting prostitution, is not an ongoing enterprise. Thus, the State was not required to elect which act it relied upon for each count and the court did not need to give a unanimous jury instruction. Unanimity was only necessary with regard to the course of conduct. The State presented substantial evidence to support Gooden's course of conduct; consequently, Gooden received unanimous verdicts regarding both of his convictions.

We affirm.

SCHOLFIELD, C.J., and GROSSE, J., concur.

Reconsideration denied May 27, 1988.

Review denied by Supreme Court October 4, 1988.