FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 21

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45383-5-II |
| Respondent, | |
| v. | |
| MICHAEL S. VAUGHN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Michael S. Vaughn appeals his convictions of malicious mischief in the first degree, driving under the influence (DUI), and obstructing a law enforcement officer. Vaughn argues that the evidence introduced at trial was insufficient to support his DUI and obstruction convictions and that the trial court erred by failing to give the jury a unanimity instruction on the obstruction charge. We disagree. In a pro se statement of additional grounds (SAG), Vaughn contends that he received ineffective assistance of counsel when his attorney failed to object to cross-examination that harmed his defense to the malicious mischief charge. Again, we disagree.

Relying on both circumstantial and direct evidence, we hold that when viewing the evidence in the light most favorable to the State, sufficient evidence exists to prove the charges of DUI and obstructing a police officer beyond a reasonable doubt. The trial court's failure to instruct the jury on the need for unanimity constituted harmless error because both acts of obstruction were proved beyond a reasonable doubt. Finally, any failure to object to the cross-examination at issue was not prejudicial because any such objection would have been pointless. We affirm Vaughn's convictions.

## FACTS

Vaughn drove away from Kenneth Raney's house at about 10 P.M. on November 18, 2012, when Raney called 911 to report a "ruckus." 2 Report of Proceedings (RP) at 115. Vaughn had arrived the night before with a bottle of whiskey. When he drove away in his white Ford Fusion which was registered to him, he was very intoxicated.

Vaughn arrived at Sandy's Deli in the white Ford approximately 20 minutes later. Charlotte Beltran, the deli cashier, saw Vaughn's car pull into the parking lot and saw Vaughn immediately enter the store. She did not see anybody with Vaughn. Surveillance video corroborated Beltran's observations. Vaughn caused a disturbance when Beltran refused to sell him liquor, and she called 911.

Deputy Erik Heilman arrived at 10:30 P.M. and detained Vaughn, who smelled strongly of intoxicants and had a cut lip. Trooper Adam Richardson arrived about 30 minutes later. Vaughn, obviously intoxicated, could not explain how he got to the deli. He did admit to drinking alcohol in his car. Vaughn refused to submit to either field sobriety or breath tests. A search of his person produced keys to the Ford. The trooper saw several empty beer cans on the passenger floorboard and clothing on the front passenger seat. Two large objects filled the back seat so nobody could sit there. Richardson took Vaughn to the hospital for treatment of his injury and for a blood draw.

While in the patrol car, Vaughn slammed his head against the right rear passenger window, which broke the window seal and caused the window to pop out of its frame. At the hospital, Richardson explained that he had obtained a warrant for a blood draw to determine Vaughn's blood alcohol content. When the laboratory assistant attempted to take the blood sample, Vaughn

"basically curled up his left arm, the arm that was free that we were planning on drawing blood from, curled it up to his face like this and said no, you're not taking my blood." 2 RP at 144. Richardson was forced to pull Vaughn's arm to the gurney. While he and a nurse tried to hold the arm down, Vaughn began kicking and flailing his legs. It took three officers to hold him down during the blood draw.

The blood test revealed that Vaughn's blood alcohol content was 0.203 grams per 100 milliliters of blood. The blood was collected at 1:30 A.M., approximately three and half hours after Vaughn left the Raney home. The toxicologist determined that Vaughn's blood alcohol level was approximately 0.23 two hours earlier.

Vaughn remained belligerent and uncooperative while being booked into jail. When officers tried to search him, he refused to place his hands against the wall, turning instead to demand a cup of water. Officers had to remove him from the booking area and place him in a separate isolated cell before they could search him.

The State charged Vaughn by amended information with first degree malicious mischief, DUI, and obstructing a law enforcement officer. Several prosecution witnesses testified to the facts cited above. Vaughn testified on his own behalf and denied driving to the deli. On cross-examination, he said that he came to the deli with a man named Ted and that he did not see any items stacked on his car seats. Vaughn added that Ted gave him the car keys and walked off after they arrived at the deli. The court sustained defense counsel's objection when the prosecutor asked Vaughn on cross examination about breaking the window, but the court denied counsel's objection when the prosecutor subsequently asked, "[Y]ou were simply not being cooperative, right?" 2 RP at 158. The prosecutor then asked Vaughn to describe his behavior with Trooper Richardson, and Vaughn admitted that he was "antagonistic and rather rude." 2 RP at 159.

The prosecutor argued to the jury that Vaughn engaged in obstruction when he resisted the blood draw at the hospital and when he resisted the search at the jail. The jury found Vaughn guilty as charged, and the trial court imposed a standard range sentence on the malicious mischief concurrent with the DUI charge and suspended the 364-day sentence on the obstruction count.

Vaughn appeals his convictions.

## ANALYSIS

I.  SUFFICIENCY OF THE EVIDENCE: OBSTRUCTING A LAW ENFORCEMENT OFFICER

Vaughn argues initially that insufficient evidence exists to prove the obstruction charge beyond a reasonable doubt. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

"A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1); *State v. Steen*, 164 Wn. App. 789, 798, 265 P.3d 901 (2011), *review denied*, 173 Wn.2d 1024 (2012). Vaughn contends that the hospital incident involving the blood draw did not prove obstruction because he was resisting the efforts of a laboratory assistant rather than the efforts of a law enforcement officer.

4

The record shows that the laboratory assistant performed the blood draw pursuant to the search warrant that Trooper Richardson obtained. Richardson and two other officers had to subdue and restrain Vaughn so that the blood draw could be completed and so that Richardson could send the blood samples to the state crime lab. By resisting, Vaughn tried to prevent Richardson from executing a search warrant. Vaughn's actions thereby hindered or obstructed a law enforcement officer from discharging his official duties.

Vaughn argues further that simply requesting a cup of water while at the jail did not prove obstruction. But that rendition does not take the evidence in the light most favorable to the State. Trooper Richardson testified that Vaughn resisted the jail search and, instead of placing his hands against the wall, turned and demanded water. He was eventually taken to a separate and isolated cell so that the officers could complete their booking duties by conducting a search. This evidence is sufficient to support the obstruction charge.

II.     RIGHT TO UNANIMOUS VERDICT

Vaughn makes the related argument that the trial court's failure to instruct the jury that it had to unanimously agree on which act supported the obstruction charge was reversible error.

Criminal defendants in Washington have a right to a unanimous jury verdict. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). When the prosecution presents evidence of multiple acts, any one of which could form the basis of a count charged, either the State must elect the act relied upon for conviction or the court must instruct the jury to agree on a specific act. *State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). Requiring a unanimous verdict on one criminal act protects a criminal defendant's right to a unanimous verdict based on an act proved beyond a reasonable doubt. *Coleman*, 159 Wn.2d at 511-12.

Where there is neither an election nor a unanimity instruction in a multiple acts case, the omission of the unanimity instruction is presumed to be prejudicial. *Coleman*, 159 Wn.2d at 512. "The omission is error because of the possibility that some jurors relied on one act or incident and some relied on another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." *Coleman*, 159 Wn.2d at 512. A defendant may challenge the lack of a unanimity instruction in a multiple acts case for the first time on appeal because it raises an issue of manifest constitutional error. *State v. Gooden*, 51 Wn. App. 615, 617, 754 P.2d 1000 (1988).

The State concedes that this was a multiple acts case. The State also concedes that error occurred when the prosecutor argued that either the jail incident or the hospital incident could support an obstruction conviction and the court failed to instruct the jury on unanimity. The State argues, however, that the error was harmless.

The presumption of error resulting from the failure to give a unanimity instruction is overcome only if no rational juror could have a reasonable doubt as to any of the incidents alleged. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988), *abrogated on other grounds, In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014). When separate instances of criminal conduct are introduced in support of a single charge, and when conflicting testimony could lead a reasonable juror to doubt whether one or more incidents actually occurred, there is no possibility of harmless error. *Kitchen*, 110 Wn.2d at 411-12. But, if the evidence is uncontroverted, a unanimity instruction is not required. *Coleman*, 159 Wn.2d at 514.

Here, the jury received no evidence to contradict the descriptions of Vaughn's uncooperative conduct at both the hospital and the jail. Vaughn himself admitted that he was antagonistic. Because no conflicting evidence existed regarding either act of obstruction, the absence of a unanimity instruction was harmless error and we affirm the conviction.

III.   SUFFICIENCY OF THE EVIDENCE: DUI

Vaughn also argues that insufficient evidence existed to support his DUI conviction because of a lack of proof that he drove his car to the deli. We again review this issue using the standard of review stated earlier, noting in particular the principle that circumstantial evidence is as reliable as direct evidence.

The crime of DUI is committed when a person drives anywhere in the State while impaired or when the person has an alcohol concentration (BAC) of 0.08 or higher within two hours of driving. RCW 46.61.502(1). The evidence showed that Vaughn had a BAC of 0.23 within two hours of his arrival at the deli. There is also evidence that he drove impaired. Vaughn is correct in arguing that there is no direct evidence to show he drove to the deli. However, the evidence demonstrates that Vaughn drove away from the Raney residence while intoxicated, and that his car arrived at the deli less than 20 minutes later. Nobody saw anyone else exit his vehicle. Vaughn possessed the car keys and the passenger seats of his car were filled with items. Vaughn's testimony that "Ted" drove him to the deli and that he did not see that his car seats were filled with items is not sufficient to undermine the inference that Vaughn drove from Raney's house to the deli. When viewed in the light most favorable to the State, sufficient evidence existed for a reasonable fact finder to find that Vaughn committed the crime of DUI.

IV.   SAG

Vaughn appears to argue in his SAG that he received ineffective assistance of counsel when his attorney failed to object to one of the prosecutor's questions during Vaughn's cross-examination.

7

To prove a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the deficiency was prejudicial. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Prejudice exists if there is a reasonable probability that the result of the proceeding would have differed had the deficient performance not occurred. *Thomas*, 109 Wn.2d at 226. When the ineffective assistance claim rests on defense counsel's failure to object, a defendant must show that an objection likely would have been sustained. *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

When the prosecutor asked Vaughn to describe his behavior toward Trooper Richardson, Vaughn replied that he was "antagonistic and rather rude." 2 RP at 159. Vaughn now argues that defense counsel should have objected because this question was beyond the scope of his direct examination. *See* ER 611 (cross-examination should be limited to subject matter of direct examination and matters affecting credibility of witness). He maintains that his answer to the State's question about his behavior damaged his defense to the malicious mischief charge.

Vaughn overlooks the fact that defense counsel did object to the State's previous question about whether he was uncooperative. The court overruled the objection after the State explained that its question was relevant to the issue of bias. Any objection to the State's subsequent question about Vaughn's behavior would have been overruled as well, and we see no deficiency in this regard. Consequently, we reject Vaughn's claim of ineffective assistance of counsel.

8

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Bjorgen, A.C.J.