IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38231-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HECTOR VALENTIN MAGANA, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J.[*] — Hector Valentin Magaña, Jr. was convicted of possession of a controlled substance with intent to deliver and unlawful possession of a firearm; he was acquitted of a second count of unlawful possession of a firearm. The jury found Mr. Magaña was armed with a firearm during the commission of the crime of possession of a controlled substance with intent to deliver, resulting in a 36-month enhancement to his sentence. Mr. Magaña challenges the sufficiency of evidence for the firearm enhancement, the trial court's failure to give the jury a unanimity instruction, the wearing of facial coverings by testifying witnesses, and the imposition of Department of Corrections (DOC) supervision fees.

---

[*] Judge John O. Cooney is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

The record contains sufficient evidence to support the firearm enhancement; a unanimity instruction was not required as Mr. Magaña was engaged in a continuing course of conduct and the State elected the act that constituted possession of a controlled substance; and Mr. Magaña waived any challenge to the testifying witnesses wearing facial coverings. We accept the State's concession and reverse the imposition of DOC supervision fees.

## FACTS

On January 17, 2020, two detectives from the Kennewick Police Department observed a vehicle driven by Anthony Herrera travel south through a Super 8 Motel parking lot. The detectives recognized Mr. Herrera and were aware of an active warrant for his arrest. The detectives initiated a traffic stop, but it took Mr. Herrera approximately a minute to stop, during which time he slowly traveled two to three blocks. Upon approaching the vehicle, one of the detectives recognized Mr. Magaña who was seated in the front passenger seat. Mr. Magaña also had an active warrant for his arrest. The detectives identified a third occupant, Federico Corrales, in the back seat. Detective Elizabeth Grant contacted the occupants of the vehicle through the driver's side window. She saw Mr. Magaña reach into his front sweatshirt pocket to pull out a cigarette. In the process, a "baggie" fell from his pocket. Detective Grant watched as Mr. Magaña attempted to secrete the baggie by wedging it between the front passenger seat and the center console. Detective Grant did not notice the other occupants making any furtive movements.

After the detectives confirmed Mr. Magaña's warrant, they attempted to remove him from the vehicle. Mr. Magaña's compliance was delayed, as the belt for his pants was buckled over the seatbelt strap. At trial, Mr. Magaña explained that upon entering the vehicle he noticed his belt was loose. He unbuckled his belt and tightened it by one or two notches. After an officer unbuckled Mr. Magaña's belt, he was freed from the seatbelt and removed from the vehicle. A search of Mr. Magaña's person yielded $960 in cash. With Mr. Magaña no longer in the vehicle, the detectives noticed a black, soft pistol holster between front passenger seat and center console. The detectives also spotted a firearm in the pouch on the back of the front passenger seat. None of the three occupants of the vehicle were eligible to possess a firearm. The vehicle was then impounded pending a search warrant.

The detectives obtained and executed a search warrant on the vehicle. Inside the center console, Detective Keith Schwartz located a Ziploc baggie containing six grams of methamphetamine. He also found a small blue backpack partially tucked under the front right passenger seat where Mr. Magaña had been seated. Inside the blue backpack, the detectives located a substantial amount of suboxone strips; four bags of methamphetamine, three of which weighed 30 grams and the fourth 23 grams; a bag containing 40 grams of heroin; two bags containing fentanyl pills, one with 96 tablets and the other with 90 tablets; numerous small empty Ziplock baggies commonly used for packaging narcotics; an operational digital scale with crystal residue consistent with methamphetamine; and a debit card in Mr. Magaña's name. The total value of the drugs

was believed to be over $4,000 and the quantity far exceeded a daily user amount. Mr. Magaña admitted ownership of the blue backpack. The contents of the backpack—*viz.,* the currency, digital scale, packaging material, and quantity of drugs—led the detectives to believe Mr. Magaña was selling drugs.

Although the detectives' testimony differed in the exact location, a Smith & Wesson handgun was found under the front passenger seat where Mr. Magaña had been seated. The firearm contained a magazine loaded with several rounds of ammunition. Detective Schwartz thought the firearm would have been accessible to the front seat passenger since mechanical components under the front passenger seat prevented accessing the firearm from the back seat.

Between the front passenger seat and the center console, the detectives discovered two holsters. One holster was a pocket-style holster and the second was a belt-loop holster. The Smith & Wesson handgun found under the front passenger seat best fit the belt holster. Although Mr. Magaña admitted the backpack belonged to him and he placed it under the seat, he denied knowing that the gun was under the seat, stuffing the holsters between the seat and center console, and being the owner of the holsters. In the rear pouch of the front passenger seat, detectives located a KelTec 9-millimeter handgun.

Following the evidentiary portion of the trial, the trial court adopted the State's proposed jury instructions. Mr. Magaña did not propose any jury instructions and only voiced mild concern over an instruction regarding his testimony. Void from the record is any discussion of a multiple acts (unanimity) instruction for the charge of possession of a

4

controlled substance with intent to deliver; a multiple acts instruction was not provided to the jury. During the State's closing argument, the contents of the backpack were exclusively argued as the act supporting the charge of possession of a controlled substance with intent to deliver. The State argued to the jury:

> [T]his bag that the defendant admitted belonged to him with the narcotics and implements in it was under the seat that he said he put there, next to a gun that fits a holster next to him with a gun that fits another holster next to him in the seat behind him.
> . . . . The state has proved the defendant possessed these controlled substances with intent to manufacture, deliver. Over $4,000 worth of narcotics. Between 50, 14 and 15 times the amount that a daily user would need for multiple drugs, not just one drug but multiple drugs. Had firearms that were directly related to that crime. The evidence here is clear[.]

Report of Proceedings (RP) (Apr. 22, 2022) at 401.

At the time of the trial, a Supreme Court order required all persons in courthouses, including testifying witnesses, to wear facial masks covering the nose and mouth to prevent the spread of COVID-19. The order was intended to protect the community while still allowing the courts to continue its essential operations. During a pretrial hearing, Mr. Magaña requested witnesses testify without wearing facial coverings. Specifically, Mr. Magaña's counsel stated he "would make all objections to the corona virus—the temporary emergency procedures of the court for the record." RP (Mar. 12, 2021) at 19. The trial court clarified, with defense counsel, "[y]ou object to everything in general but nothing in particular at this time?" *Id.* at 20. The court denied the motion based on the emergency order but potentially allowed an option for witnesses to testify

without facial coverings by video from the next room. Mr. Magaña did not choose that option and the issue was reserved. At a later pretrial hearing, the trial court asked both Mr. Magaña and the State to file briefing if there were any issues with applying COVID-19 restrictions to witnesses. None were filed. The issue was never revisited during trial.

Mr. Magaña was found guilty of possession of a controlled substance with intent to manufacture or deliver, and unlawful possession of a firearm. He was acquitted on a second count of unlawful possession of a firearm. Mr. Magaña was sentenced to 96 months for possession of a controlled substance with intent to deliver and 75 months for unlawful possession of a firearm, both sentences to be served concurrently. A 36-month consecutive sentence enhancement was added to the charge of possession of a controlled substance with intent to manufacture or deliver based on the jury's finding that Mr. Magaña was armed with a firearm during the perpetration of the crime.

On the judgment and sentence, the court failed to check the box indicating Mr. Magaña was indigent. The court imposed a $500 victim assessment, struck the $200 criminal filing fee, and suspended the deoxyribonucleic acid (DNA) fee. The judgment and sentence contained the standardized language under paragraph 4.2(B)(7) that the defendant shall "pay supervision fees as determined by DOC[1]." Clerk's Papers at 388. Absent from the record is any discussion between the court and Mr. Magaña regarding

---

[1] Department of Corrections.

6

his then present or future ability to pay any legal financial obligations. Mr. Magaña

timely appealed.

ANALYSIS

*Does the record contain evidence sufficient for the jury to find Mr. Magaña was armed with a firearm while committing possession of a controlled substance with intent to deliver?*

Mr. Magaña challenges the imposition of the firearm enhancement to his sentence

of possession of a controlled substance with intent to deliver. Mr. Magaña argues that,

other than mere proximity to the firearm, the evidence was insufficient to prove he was

armed with a firearm during the commission of the crime of possession of a controlled

substance with intent to deliver.

"Whether a person is armed is a mixed question of law and fact. This court

determines whether the facts are sufficient as a matter of law to prove that the defendant

was armed by de novo review." *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 825, 425

P.3d 807 (2018) (citation omitted) (quoting *State v. Schelin*, 147 Wn.2d 562, 566, 55 P.3d

632 (2002) (plurality opinion)). A reviewing court determines whether evidence is

sufficient such that any rational trier of fact could have found the elements of the charged

crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628

(1980). "A claim of insufficiency admits the truth of the State's evidence an all

inferences that can reasonably be drawn from it." *State v. DeVries*, 149 Wn.2d 842, 849,

72 P.3d 748 (2003). The evidence is viewed in the light most favorable to the State and

all reasonable inferences are drawn in favor of the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

A person is potentially subject to a deadly weapon enhancement if armed with a firearm while committing a crime. RCW 9.94A.533(3). A person is "armed" if (1) a weapon is easily accessible and readily available for either offensive or defensive purposes during the commission of the crime, and (2) a nexus exists among the defendant, the weapon, and the crime. *Sassen Van Elsloo*, 191 Wn.2d at 826 (citing *State v. Eckenrode*, 159 Wn.2d 488, 493, 150 P.3d 1116 (2007)). The defendant does not have to be armed at the moment of arrest for the purpose of a firearm enhancement, and the State need not prove the moment of accessibility with mathematical precision. *State v. O'Neal*, 159 Wn.2d 500, 504-05, 150 P.3d 1121 (2007). For continuing crimes like drug operations, a nexus exists if the weapon is there to be used. *State v. Gurske*, 155 Wn.2d 134, 138, 118 P.3d 333 (2005).

In viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in favor of the State, a rational trier of fact could have found beyond a reasonable doubt that Mr. Magaña was armed with a firearm while committing the crime of possession of a controlled substance with intent to deliver. Mr. Magaña admitted ownership of the blue backpack containing over $4,000 in drugs, property he may have reasonably desired to protect. Mr. Magaña admitted, moreover, to placing the blue backpack partially under the front passenger seat, the same area the Smith &

Wesson handgun was located. Both the blue backpack and firearm were within Mr.

Magaña's reach and were inaccessible from the rear passenger compartment.

Compellingly, at the time of the stop, Mr. Magaña was seen stuffing something

between the front passenger seat and the center console—the same location the two

holsters were found. The holster capable of holding the Smith & Wesson firearm found

under Mr. Magaña's seat was the holster designed to be affixed to a belt. In the short

distance Mr. Magaña traveled in the vehicle, he unbuckled his belt and affixed it over the

seatbelt strap. Substantial evidence supports the jury's finding; the enhancement to Mr.

Magaña's sentence for possession of a controlled substance with intent to deliver is

affirmed.

*Was Mr. Magaña deprived of his right to a unanimous jury verdict based upon the trial
court's failure to provide a unanimity instruction for charge of possession of a controlled
substance with intent to deliver?*

Criminal defendants are entitled to a unanimous verdict under article I, § 21, of the

constitution of the State of Washington. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707,

881 P.2d 231 (1994). If a defendant is alleged to have committed multiple unlawful acts

but the State has charged that defendant with only a single count, jury unanimity must be

protected. *State v. Carson*, 184 Wn.2d 207, 217, 357 P.3d 1064 (2015), (citing *State v.

Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984)). In such an event, the State must

either elect a single act on which it will rely or instruct that jurors agree "the same

underlying criminal act has been proved beyond a reasonable doubt." *Petrich*, 101 Wn.2d

at 572.

9

Mr. Magaña claims the trial court erred in failing to give the jury a unanimity instruction for the charge of possession of a controlled substance with intent to deliver. Without such an instruction, Mr. Magaña argues, the State relied on two distinct and separate criminal acts to secure a conviction for possession of a controlled substance with intent to deliver (i.e., the contents of the blue backpack and the methamphetamine found in the center console).

Before the trial court, Mr. Magaña did not propose a unanimity instruction nor did he request the State elect which drugs it was relying on to support the charge of possession of a controlled substance with intent to deliver. Mr. Magaña's inaction is not fatal as a defendant can assert a manifest error affecting a constitutional right for the first time on appeal. *State v. Nguyen*, 165 Wn.2d 428, 433, 197 P.3d 673 (2008). The right to a unanimous verdict is derived from the fundamental constitutional right to a trial by jury and thus may be raised for the first time on appeal. *State v. Fitzgerald*, 39 Wn. App. 652, 655, 694 P.2d 1117 (1985).

We review the adequacy of jury instructions de novo as a question of law. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and, when read as a whole, properly inform the jury of the applicable law. *State v. Riley,* 137 Wn.2d 904, 908 n.1, 909, 976 P.2d 624 (1999).

A multiple acts case is one in which the prosecution presents evidence of multiple acts of similar misconduct, any one of which could form the basis of a count charged.

10

*State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). In multiple acts cases, the jury must unanimously agree as to which incident constituted the crime charged. *Id*. When the State presents evidence of multiple acts which indicate a "continuing course of conduct," neither a unanimity instruction nor election by the State is required. *State v. Handran*, 113 Wn.2d 11, 17-18, 775 P.2d 453 (1989). A continuing course of conduct requires an ongoing enterprise with a single objective. *State v. Gooden*, 51 Wn. App. 615, 619-20, 754 P.2d 1000 (1988). To determine whether conduct constitutes one continuing act, the facts must be evaluated in a commonsense manner. *Petrich*, 101 Wn.2d at 571. Where conduct is intended to secure the same objective, it supports a finding of a continuing course of conduct. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995), (citing *Handran*, 113 Wn.2d at 17). Whether the conduct occurred at different times and places or against different victims aids the court's determination. *Petrich*, 101 Wn.2d at 571.

Mr. Magaña's case is not a multiple acts case—it is a multiple baggies case. Among other items, inside Mr. Magaña's blue backpack were four bags of methamphetamine, three of which totaled 53 grams, and numerous small empty Ziplock baggies commonly used for packaging narcotics. The six-gram baggie of methamphetamine found in the center console was of similar appearance as the baggies found in Mr. Magaña's backpack. The baggies of methamphetamine, heroin, fentanyl, cash, empty baggies, and digital scale surrounding Mr. Magaña's location in the vehicle

11

are indictive of an ongoing operation. A unanimity instruction was not required; Mr. Magaña was not deprived of his right to a unanimous jury verdict.

Alternatively, yet equally valid, during its closing argument the State elected the act it was relying upon to support a conviction for possession of a controlled substance with intent to deliver. For an election to be effective the State must tell the jury which act to rely on in its deliberations. *Kitchen*, 110 Wn.2d at 409. The Supreme Court has "never held that the State's election of an act must be ratified by the court or incorporated into the charging document or jury instructions in order to be effective." *Carson*, 184 Wn.2d at 227. Indeed, "an election can be made by the prosecuting attorney in a verbal statement to the jury as long as the prosecution 'clearly identifie[s] the act upon which' the charge in question is based." *Id.*, (quoting *State v. Thompson*, 169 Wn. App. 436, 474-75, 290 P.3d 996 (2012)).

Here, a rational jury could have a reasonable doubt as to whether the six-grams of methamphetamine located in the center console could constitute possession of a controlled substance with intent to deliver. But even if we were to assume arguendo that the evidence could be construed as pointing to an additional act, the State, in its closing argument, clearly, explicitly, and exclusively elected the contents of the blue backpack to support a conviction for possession of a controlled substance with intent to deliver. Mr. Magaña has not demonstrated a constitutional error.

*Was Mr. Magaña's right to due process violated when witnesses at trial testified while wearing facial coverings?*

12

Mr. Magaña claims that, over his objection, the trial court would not allow witnesses to testify without wearing facial coverings. This, Mr. Magaña argues, prevented the jury from being able to accurately assess the credibility and demeanor of the witnesses, thereby depriving him of his constitutional right to due process and a fair trial.

At the trial court's invitation, Mr. Magaña objected to witnesses wearing facial coverings while testifying. The trial court made a tentative ruling, but, upon further comments from defense counsel, reserved ruling on the issue. The trial judge noted, "All right. In that case, I will need to know by next week any particular witness that you wish to do that because that will be a scheduling issue." RP (Mar. 12, 2021) at 17. Thereafter, defense counsel never renewed his request.

"A defendant who does not seek a final ruling on a motion in limine after a court issues a tentative ruling waives any objection to the exclusion of the evidence." *State v. Riker,* 123 Wn.2d 351, 369, 869 P.2d 43 (1994), (quoting State v. *Carlson*, 61 Wn. App. 865, 875, 812 P.2d 536 (1991)). Mr. Magaña failed to seek a further ruling and has, therefore, waived any prejudice resulting from witnesses wearing facial coverings while testifying.

*Did the trial court abuse its discretion by imposing community custody supervision fees?*

Mr. Magaña contends the trial court erred when it imposed discretionary DOC supervision fees upon him by using the boilerplate language contained in the judgment

13

and sentence. In response, the State concedes that the trial court erred by imposing community custody supervision fees. Discretionary legal financial obligations cannot be imposed without first considering the defendant's individual financial circumstances and an individualized inquiry into the defendant's current and future ability to pay. *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

We accept the State's concession, reverse the trial court's imposition of DOC supervision fees, and remand to the trial court to strike the DOC supervision fees from the judgment and sentence.

Affirmed; reversed in part.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.P.T.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, A.C.J.

14